Maureen V. Abbey
**HENINGER GARRISON DAVIS, LLC**
220 Saint Paul Street
Westfield, New Jersey 07090
Telephone: (908) 379-8475
Facsimile: (908) 301-9008
Maureen@hgdlawfirm.com

**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON DIVISION

| | | |
|---|---|---|
| **SAWHORSE ENTERPRISES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:12-cv-06811(FLW)(TJB)** |
| **v.** | ) | |
| | ) | |
| **CHURCH & DWIGHT CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 1

LEGAL STANDARD.................................................................................................................. 5

ARGUMENT ............................................................................................................................... 6

I.    The "reasonableness" standard should be utilized by this Court, even though Sawhorse can also satisfy the more stringent Notaro standard.................................................................. 6

    a.    Sawhorse meets the "reasonableness" standard for permitting discovery prior to a Rule 26(f) conference............................................................................................................... 8

    b.    Sawhorse meets the heightened standard articulated in Notaro permitting expedited discovery.............................................................................................................................. 10

        i.    Sawhorse will suffer irreparable injury if this Motion is not granted. ....................... 10

        ii.    Sawhorse can demonstrate more than "some probability of success on the merits" for each of its claims.................................................................................................................. 11

        iii.    The connection between the avoidance of irreparable harm suffered by Sawhorse and the expedited discovery is strong. ..................................................................................... 12

        iv.    Balancing of injury ...................................................................................................... 13

CONCLUSION.......................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Barbieri v. Wells Fargo & Co.*, No. 09-cv-3196, 2012 WL 3089373 (E.D. Pa. 2012) ................. 5

*Better Packages, Inc. v. Zheng*, 2006 WL 1373055 (D.N.J. 2006) ............................................ 6, 8

*Entertainment Technology Corporation v. Walt Disney Imagineering*, 2003 WL 22519440 (E.D. Pa. Oct. 2, 2003) ................................................................................................................... 5, 7

*Gucci America, Inc. v. Daffy's Inc.,* 2000 WL 1720738, * (D.N.J. 2000). .............................. 6, 10

*Notaro v. Koch,* 95 F.R.D. 403 (S.D.N.Y. 1982) .............................................................. 6, 7, 12, 13

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002) ........................ 5

**Rules**

Fed. R. Civ. P. 26(f) ................................................................................................................... 5

Fed. R. Civ. P. 26(d) ................................................................................................................... 5

Fed. R. Civ. P. 16(b) ................................................................................................................... 5

**PRELIMINARY STATEMENT**

Plaintiff Sawhorse Enterprises ("Plaintiff" or "Sawhorse"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 26(d) for expedited discovery from Defendant Church & Dwight, Co., Inc. ("Defendant" or "C&D") regarding narrowly-defined topics related to certain claims asserted against Defendant - fraud, quantum meruit, and breach of the covenant of good faith and fair dealing. Sawhorse's Chief Executive Officer ("CEO") is Dr. Sandor Gardos, who has information relevant to all of these claims. Currently, he is suffering from a health condition that is both progressive and degenerative. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ As set forth in detail below, Sawhorse's motion is well-supported under any of the current standards that courts routinely apply to evaluate such motions, which includes whether the motion is made in good faith, and poses little, if any, risk of harm to Defendant. Therefore, Sawhorse respectfully requests that the Court grant its Motion, and order C&D to provide the discovery sought in Exhibits A through E attached thereto.

**FACTUAL BACKGROUND**

Dr. Sandor Gardos, Chief Executive Officer of Sawhorse, is pivotal in this litigation due to his extensive involvement and intimate knowledge of the facts and occurrences relating to the claims of this case. The life of Dr. Gardos thus far has been defined by his enormous contributions to the fields of clinical psychological, particularly sexual therapy. Dr. Gardos's

1

knowledge and experience in these fields prompted him to form Sawhorse Enterprises in 2001, a

pioneer in the adult sex toy industry. ████████████████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████

　████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████

████████████████████████████

██████████████████████████

　██████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████

██████████████████████████

████████████████████████████

3

4

## <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 26(f), litigants are required to meet and confer regarding initial disclosures, a discovery plan and other matters "as soon as practicable and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b)." Fed. R. Civ. P. 26(f). Federal Rule of Civil Procedure 26(d) bars parties from proceeding with formal discovery prior to a Rule 26(f) conference unless the parties agree to expedited discovery or if the Court so authorizes. There are two standards to which courts in this circuit adhere when evaluating motions for expedited discovery.

To determine whether expedited discovery is appropriate in a given case, courts in the Third Circuit generally follow a flexible "good cause" or "reasonableness" standard in which "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Entertainment Technology Corporation v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440 (E.D. Pa. Oct. 2, 2003). Under the reasonableness standard, the primary concern is that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Other factors include "the timing of the request for expedited discovery in relation to the start of formal discovery, whether the requests are overly broad, whether the requesting party will suffer irreparable harm if discovery is not expedited, and whether there is a preliminary injunction hearing pending." *Barbieri v. Wells Fargo & Co.*, No.

5

09-cv-3196, 2012 WL 3089373, *3 (E.D. Pa. 2012)(*citing Entertainment Tech. Corp.*, 2003 WL 22529440, *3).

Some courts within this circuit require the meeting of a more stringent standard, articulated in *Notaro v. Koch,* which sets forth four factors akin to those used to weigh a motion for preliminary injunction. 95 F.R.D. 403 (S.D.N.Y. 1982). Under this *Notaro* standard, plaintiffs are required to establish: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.* at 405. Even though this standard has been disfavored for the "reasonableness" standard discussed above,[1] determining the most applicable standard here is immaterial because Sawhorse easily satisfies both of these tests, justifying an order permitting it to engage in expedited discovery.

## ARGUMENT

### I. The "reasonableness" standard should be utilized by this Court, even though Sawhorse can also satisfy the more stringent Notaro standard.

Courts have described the circumstances used to dictate whether the *Notaro* standard or the "reasonableness" standard will be employed. "A large part of the reasoning behind the court's heightened standard for expedited discovery in *Notaro* and the reason for the court's

---

[1] *See, e.g.,Kone Corp. v. Thyssenkrupp USA, Inc.*, No. 11-465, 2011 WL 4478477 (D. Del. Sept. 26, 2011); *Entm't Tech. Corp*., 2003 WL 22519440 at *4.

application of *Notaro* to *Gucci* was that the nonmoving party in both cases needed protection form the plaintiff's extraordinary discovery requests at such an early stage of the litigation." *Better Packages, Inc. v. Zheng*, 2006 WL 1373055, *4 (D.N.J. 2006)(citing *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) and *Gucci America, Inc. v. Daffy's Inc.*, 2000 WL 1720738, *6 (D.N.J. 2000). Such protection is not necessary.[2] C&D has retained counsel and has had ample opportunity from the date of service of the Complaint (Dkt. No. 1, filed November 2, 2012) and the First Amended Complaint (Dkt. No. 4, filed November 30, 2012) to begin its investigation and fact review. Also, unlike in *Gucci*, Sawhorse is not using this requested expedited discovery for "questionable motives," as the request has no ulterior motive beyond establishing facts in this case. *Gucci,* 2000 WL 1720738 at *6 (According to the court, Gucci was seeking discovery on Daffy's source of supply and its customers who had bought allegedly counterfeit bags in order to choke off the parallel supplier and contact customers in an effort to bring outside pressure to bear on the supplier, rather than for the purpose of establishing trademark infringement and unfair competition.). Here, C&D's interests outside of its dealings with Sawhorse will not be greatly harmed, nor is information requested for any other purpose beyond making sure that Dr. Gardos' knowledge regarding this litigation can be properly examined, cross-examined, and put into the record. Thus, the "reasonableness" standard should apply and is unquestionably satisfied.

---

[2] The reasoning behind the *Notaro* and *Gucci* decisions was that the non-moving party needed protection of the court from the plaintiff's extraordinary discovery requests made extraordinarily early in the litigation process. The need for protecting the defendants from "unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel," coupled with the substantive elements of plaintiffs' the discovery requests, resulted in the appropriateness of the preliminary injunction-like factors. *See Notaro,* 95 F.R.D. at 405. *Entertainment Technology Corp. v. Walt Disney Imagineering, et al.*, 2003 WL 22519440, *4 (E.D.Pa. 2003)

a.  **Sawhorse meets the "reasonableness" standard for permitting discovery prior to a Rule 26(f) conference.**

As noted above, under the "reasonableness" standard, a court should take into account and analyze all facts and circumstances surrounding a motion to expedite discovery.  Ultimately, the decision to grant the motion is within the sound discretion of the Court.  As the burden of responding to the discovery is slight due to its narrow scope, Sawhorse's Motion should be granted to preserve the administration of justice.

Sawhorse seeks limited discovery based only on three of its claims:  (1) fraud, (2) quantum meruit, and (3) breach of the implied covenant of good faith and fair dealing.  Because these claims will be supported or contradicted by facts predominantly within the control of Dr. Gardos and certain employees of C&D, Sawhorse specifically seeks all documents relating to these claims or any future-asserted defenses to these claims.[3]  In specific, Sawhorse is seeking documents relating to communications between Dr. Gardos, Adam Glickman of Condomania, G-High personnel,  Bruce Weiss, Vice President of C&D's Trojan brand, and Jim Daniels, Vice President of Sexual Health Marketing at C&D.[4]  In addition, Sawhorse proposes that Dr. Gardos be deposed within the next two months through written questions rather than an in-person, oral deposition for the reasons set forth above and Dr. Gardos' Declaration filed concurrently herewith. Plaintiff also seeks deposition testimony from at least Mr. Daniels and Mr. Weiss.

Next, courts consider any limitation of the purported early discovery requests to specific claims and only the most vital individuals to the litigation makes the facts and circumstances

---

[3]  To date, C&D has not yet answered the First Amended Complaint; therefore, its defenses and any counterclaims cannot be known at this time.  Thus, Sawhorse wants to reserve the right to state that Dr. Gardos' knowledge may also be essential to any defense to  certain future claims should they be asserted.

[4]  The job titles provided herein may not be current and are based solely on publicly-available information.

markedly different than the situation encountered in *Better Packages, Inc. v. Zheng.*  2006 WL

1373055 (D.N.J. 2006).  The *Better Packages* Court denied the request for expedited discovery

because 1) the requested discovery covered the entirety of the Complaint, not just the

preliminary injunction, 2) the parties lengthy and intimate dealings spanning almost ten years, 3)

the sense that most of the requested discovery would be superfluous or secondary evidence

regarding a preliminary injunction, and 4) the scope was overly broad in its scope.  *Id.* at *5.

The requests tendered as exhibits by Sawhorse are extremely limited in scope, pertaining solely

to the people and documents that concern interactions with Dr. Gardos, as opposed to Sawhorse

in general.  Furthermore, the requests also concern only Counts IV, V, and VI and seek evidence

directly related to those counts, which would not be secondary or superfluous as to its purpose.

In order to build a successful case, Sawhorse will need the sharp mind of Dr. Gardos to

verify all documents and electronic files produced by C&D based specifically on its early

9

communications with Dr. Gardos in forming a business relationship and any other documents produced that relate to C&D's specific promises of compensation and an expected partnership with Sawhorse.  Likewise, due to his close relationship with C&D's upper level management, Sawhorse needs Dr. Gardos to assist in gathering facts and analyzing the prior history between the parties.

This Motion is not only seeking to protect the Plaintiff, but also seems equally vital to C&D's defenses and/or counterclaims, if asserted.  Without expedited discovery, C&D risks prejudice to its defense as it would be unable to cross-examine Dr. Gardos on these claims or any of his documents. This risk significantly outweighs any other potential prejudice that C&D would experience in having to produce documents and witnesses for deposition at this early stage of litigation.



**b. Sawhorse meets the heightened standard articulated in Notaro permitting expedited discovery.**

**i. Sawhorse will suffer irreparable injury if this Motion is not granted.**

As noted above, Sawhorse is seeking the Court's leave to conduct formal discovery prior to a Rule 26(f) conference, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████ In sum, Sawhorse's case would

suffer irretrievable harm.

### ii. Sawhorse can demonstrate more than "some probability of success on the merits" for each of its claims

The *Notaro* standard further requires a plaintiff to demonstrate "some probability of success on the merits." 95 F.R.D. at 405. "The probability of success need not be overwhelming or all but assured; the requisite probability need only be a 'reasonable probability.'" *Gucci*, *7 (citing *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d. Cir. 1994). Each of the causes of actions alleged by Sawhorse is supported with indisputable and highly pertinent facts. Sawhorse not only meets the requisite burden, but it far surpasses a reasonable probability of success.

Over the course of its relationship with C&D, Sawhorse entered into three written agreements with C&D that have been fundamentally breached by C&D: (1)the Confidentiality Agreement, (2) the Option Agreement, and (3) the Technology Licensing Agreement.

In its First Amended Complaint, Sawhorse has provided ample details of evidence of breach of at least one contract clause. Having produced the documents in its Motion to Dismiss as exhibits, C&D is aware of these agreements and the terms therein. Based on the facts of the First Amended Complaint and the agreements produced, a breach of the terms is evident. Thus, there is a high probability that the breach of contract claims will succeed.

Further, the First Amended Complaint outlined the course of conduct between the parties relating to the contracts. Although C&D would have the Court only focus on the three contracts and confine any and all discovery to the contracts themselves, the contracts are not the boundaries of discovery, nor is Sawhorse's and C&D's relationship solely governed by the contracts. This is a fundamental difference between Sawhorse's understanding of the relationship and C&D's attempt to narrow it to only the three agreements, which is far too

11

limiting.  In Counts IV, V, and IV, claims are made for breach of the implied covenant of good faith and fair dealing, quantum meruit, and fraud.  These claims necessarily extend beyond the four corners of any contract.  In reality, this case is about a business venture which ultimately produced three contracts, but in getting to those contracts, C&D violated the covenant of good faith and fair dealing, committed fraud on Sawhorse, and benefitted far more than they paid.  Simply put, the Counts listed in Sawhorse's First Amended Complaint are not as easily disentangled or limiting as C&D fervently wishes they were.

Sawhorse has shown in its First Amended Complaint that C&D consistently made promises of a lucrative business partnership.  Partnership is not confined to a single definition.  In this case, the partnership was a mutually profitable relationship.  Instead of being mutually profitable, C&D used Sawhorse as an integral part to opening a factory, business contacts in a highly regulated and secretive industry in China, Dr. Gardos's knowledge of adult sexual products, and countless hours of work from Sawhorse. Gardos Dec. at ¶ 3, 4, 18, 23, 25-26.  In return, C&D only licensed one item from Sawhorse, and then proceeded to use the factory and information it had obtained from Sawhorse to create an entire product line – *all without ever compensating Sawhorse for its consulting time*.  Gardos Dec. at ¶ 25, 29, 30, 32.  Despite conversations and promises to the contrary, it seems that C&D never intended to adequately compensate Sawhorse or have a mutually profitable relationship.  Gardos Dec. at ¶ 24. Thus, C&D's bad faith intent and fraud should not be shielded simply because there were three contracts that defined some of the bargain between the parties.  The entire course of conduct is at issue, and Sawhorse should be compensated for its mammoth efforts.  The facts developed thus far show a reasonable probability of success on the merits.

### iii. The connection between the avoidance of irreparable harm suffered by Sawhorse and the expedited discovery is strong.

12

*Notaro* states that the party seeking expedited discovery must establish "some connection between the expedited discovery and the avoidance of the irreparable injury." Sawhorse is seeking leave of the Court to conduct formal discovery ████████████████████████



████████████████████████ The resulting harm of losing this discovery only lends to gutting an essential portion of this litigation.

### iv.  Balancing of injury

Furthermore, the expedited discovery Sawhorse seeks does not place an unreasonable burden on C&D. The discovery requested by Sawhorse is narrowly tailored to accomplish its immediate objective: to preserve the testimony and aid of Dr. Gardos in support of this case. In addition, ████████████ would similarly harm C&D if expedited discovery is not granted. In the end, "the injury that will result [to Sawhorse] without expedited discovery looms greater than the injury that [C&D] will suffer if the expedited relief is granted."[5]

### CONCLUSION

Sawhorse has, as set forth above, satisfied the requirements for obtaining expedited discovery under both the reasonableness standard of this Court and the more stringent *Notaro* standard. Therefore, based on the foregoing, Sawhorse respectfully requests that the Court grant

---

[5] *Notaro*, 95 F.R.D. at 405.

its Motion for Early Discovery and allow Sawhorse to conduct the discovery as presented in the

attached exhibits.

Dated: January 22, 2013                                    s/ Maureen V. Abbey
                                                           Maureen V. Abbey
                                                           **HENINGER GARRISON DAVIS, LLC**
                                                           220 Saint Paul Street
                                                           Westfield, New Jersey 07090
                                                           Telephone: (908) 379-8475
                                                           Facsimile: (908) 301-9008
                                                           Email: Maureen@hgdlawfirm.com

                                                           *Attorney for Plaintiff*
                                                           *Sawhorse Enterprises, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2013, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic

filing to all persons registered for ECF as of that date.

   s/ *Maureen V. Abbey*