John P. Barry
**Proskauer Rose LLP**
One Newark Center
Newark, NJ 07102
Tel: (973) 274-6081
Fax: (973) 274-3299
jbarry@proskauer.com

Richard M. Goldstein *
Baldassare Vinti *
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
* *Pro Hac Vice application to be filed*

*Attorneys for Defendant*
*Church & Dwight Co., Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAWHORSE ENTERPRISES, INC.,

                              Plaintiff,

-against-

CHURCH & DWIGHT CO., INC.,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civ. No. 3:12-CV-06811 (FLW) (TJB)

**Return Date: February 19, 2013**

Document Electronically Filed

**Oral Argument Requested**

## DEFENDANT CHURCH & DWIGHT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

PRELIMINARY STATEMENT .......................................................................................... 2

ARGUMENT ....................................................................................................................... 7

    I.     IT IS INAPPROPRIATE TO EXPEDITE DISCOVERY BECAUSE THERE IS A MOTION PENDING BEFORE THE DISTRICT COURT TO STAY ALL DISCOVERY IN THIS MATTER ................................................ 7

    II.    IN ANY CASE, PLAINTIFF HAS WHOLLY FAILED TO MEET ITS BURDEN UNDER EITHER STANDARD APPLICABLE TO A MOTION TO EXPEDITE DISCOVERY ................................................................ 9

        A.    The Notaro Standard ........................................................................... 9

        B.    The Reasonableness Test .................................................................... 13

    III.    IF DISCOVERY PROCEEDS AFTER THE DISTRICT COURT RULES ON THE MOTIONS BEFORE IT, CHURCH & DWIGHT SHOULD BE PROVIDED AN OPPORTUNITY TO RESPOND TO PLAINTIFF'S REQUEST TO LIMIT DR. GARDOS' DEPOSITION TO WRITTEN QUESTIONS AFTER IT HAS HAD THE OPPORTUNITY TO REVIEW AN INDEPENDENT MEDICAL EVALUATION OF DR. GARDOS .............. 16

CONCLUSION .................................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barbieri v. Wells Fargo & Co.,*
Civ. No. 09-3196 (RBS), 2012 WL 3089373 (E.D.Pa. July 27, 2012) ....................................13

*Better Packages, Inc. v. Zheng,*
Civ. No. 05-4477 (SRC), 2006 WL 1373055 (D.N.J. May 17, 2006) ..................10, 12, 13, 14

*Entm't Tech. Corp. v. Walt Disney Imagineering,*
Civ. No. 03-3546, 2003 WL 22519440 (E.D.Pa. Oct. 2, 2003) ..............................................14

*Exclusive Supplements, Inc. v. Abdelgawad,*
Civ. No. 12-1652, 2013 WL 160275 (W.D.Pa. Jan. 15, 2013) ...............................................14

*Gucci Am., Inc. v. Daffy's, Inc.,*
Civ. No. 00-4463 (AMW), 2000 WL 1720738 (D.N.J. Nov. 14, 2000) ....................................9

*Nest Intern., Inc. v. Balzamo,*
Civ. No. 12-2087 (JBS/KMW), 2012 WL 1584609 (D.N.J. May 3, 2012) .............................14

*Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.,*
Civ. No. 98-2782, 1998 WL 404820 (E.D.Pa. July 15, 1998) ................................................15

ii

**INTRODUCTION**

By its present motion, Plaintiff seeks expedited, wide-scale discovery of Defendant Church & Dwight Co., Inc. ("Church & Dwight"). As we will show, the motion should be denied for three equally compelling reasons. First, although conspicuously never mentioned in Plaintiff's papers, there is presently pending before the District Court a motion to stay all discovery pending disposition of Church & Dwight's motion to dismiss the Amended Complaint.[1] Plaintiff should not be permitted to circumvent that motion by an end-run to this Court.[2] Second, and in any case, Plaintiff has not remotely met the standard for permitting expedited discovery. Courts employ two tests in considering such requests, and Sawhorse hasn't approached satisfying either. That is true even if the Court fully assumes the truth of the

Plaintiff has made no showing to justify expedited discovery of Church & Dwight. Since the sole ground proffered by Plaintiff is based on Dr. Gardos' medical condition, if there is to be any expedited discovery, it should only be of Dr. Gardos himself, and then only after Judge Wolfson rules on the motions before her. Tellingly, however, at the same time Plaintiff seeks expedited discovery of Church & Dwight, it asks this Court to rule that Dr. Gardos may only be deposed by written questions, thereby denying Church & Dwight the opportunity to depose the person

---

[1] Although Plaintiff's memorandum in support of its motion to expedite discovery mentions, in passing, Church & Dwight's motion to dismiss, no mention is made of Church & Dwight's accompanying motion to stay all discovery.

[2] Church & Dwight filed its motions to dismiss and to stay discovery on January 9, 2013, with a February 4, 2013, return date. Thereafter, Plaintiff informed Church & Dwight that it intended to file a motion for expedited discovery and requested that Church & Dwight adjourn the return date of its motions to February 19, 2013, so that they would be returnable the same day as the motion for expedited discovery and be considered at the same time. Church & Dwight agreed to the adjournment. Surprisingly, Plaintiff then made its motion for expedited discovery to this Court instead of Judge Wolfson.

Plaintiff identifies as its key witness.  As we will show, there is simply no justification to permit expedited, wholesale discovery of Church & Dwight at this time, and certainly none to permit Plaintiff's key witness to avoid being deposed at all.

## PRELIMINARY STATEMENT

Church & Dwight is the manufacturer of a variety of well-known brands, including Arm & Hammer products and Trojan condoms, among others.  The thrust of Plaintiff's Amended Complaint is the farfetched  claim that "with the promise of partnership, [Sawhorse] taught C&D how to redesign, develop and market [its] TROJAN product line and assisted C&D in implementing a new strategy, developing new products, and creating an entirely new marketing, manufacturing and distribution division." (Am. Compl.¶1).  This allegation is manifestly implausible, not the least because TROJAN has been a leading and innovative brand for decades – many years before this Plaintiff claims to have had any contact with Church & Dwight.  But what makes this allegation false on its face is that the Technology Licensing Agreement the parties actually signed contains explicit language forbidding this very claim.  In words that

nonetheless charged Church & Dwight with breach of contract, fraud and other claims based on some notion of a promised "partnership"– years after the events – is indefensible in the extreme.

The Technology Licensing Agreement is one of three contracts that governed the relationship between these parties.  Not one of them supports the charges made here.  Instead, they created a simple licensing arrangement under which Church & Dwight markets a single product (a finger vibrator) for which it has regularly paid Plaintiff a negotiated royalty and fee.

2

Nonetheless, calling itself a "pioneer in the industry of adult sex toys," (Am. Compl. ¶9), Plaintiff claims that "on the back of [its] experience and expertise, C&D has reaped tens if not hundreds of millions of dollars in ill-gotten gains and billions of dollars in increased market capital." (Id. ¶1). This outlandish claim is built on the accusation that Church & Dwight misappropriated confidential information to develop and market various products without offering Sawhorse the "partnership" or other remuneration Plaintiff now claims – some six years after the events – it had expected.

There is a simple, easily verifiable fact that gives the lie to Plaintiff's allegation: ***not once in the Amended Complaint does Plaintiff identify a single Church & Dwight product, by name or description, that is allegedly based on technology misappropriated or otherwise wrongfully used by Church & Dwight***! That is not an overstatement. The Complaint, already amended once, fails to specify any Church & Dwight product whatsoever that was allegedly developed, conceived or marketed based on information or ideas (or anything else) that was allegedly taken from Sawhorse – beyond the one product that is the subject of their Technology Licensing Agreement. Given the allegation that Church & Dwight is making "billions" openly selling its products, Plaintiff's failure to cite a single one of them speaks volumes about the bona fides of its complaint.

It is against that striking absence of detail that Plaintiff's application for expedited discovery must be viewed. The picture that emerges is a party seeking to bend the rules to get discovery as soon as possible in the hope of crafting a claim, not a party acting in good faith to pursue one. Indeed, as we will show, Plaintiff's motion is nothing but an attempt to circumvent both the authority of Judge Wolfson and clear precedent in this Circuit. This is so even if one fully assumes the truth of Dr. Gardos' undiagnosed and uncorroborated medical condition.

3

As noted, pending before Judge Wolfson are two motions by Church & Dwight that bear directly on the application here – a Motion to Dismiss the First Amended Complaint and a companion Motion to Stay Discovery. (Copies of both motions are attached to the accompanying Declaration of John P. Barry ("2/5/13 Barry Decl.") as Exhibit B). The motion to stay discovery is based on two principal arguments. The first is that the resolution of the underlying motion to dismiss will either mitigate or completely obviate the need for discovery. Although that may be said of most motions to dismiss, the inadequacies of the Amended Complaint at bar are so glaring as to make the possibility that it will be dismissed highly likely, which would eliminate the need for any discovery. The second ground for a stay of discovery is based on the particular allegations and theories Plaintiff has advanced here. As noted, the crux of the Amended Complaint is the claim that Church & Dwight has misused or misappropriated Plaintiff's supposed confidential information to develop and market various of its products. As our motion before the District Court demonstrates, in such cases, as in the theft of trade secrets context, courts are particularly reticent to permit discovery where, as here, it is potentially sought to invent a claim. Put simply, a plaintiff is required to identify the confidential information and the products which the defendant allegedly used that information to develop before discovery is permitted – not, as Sawhorse would have it, the other way around.

The Amended Complaint is the archetypical example of such an improper effort. Plaintiff now demands wholesale discovery relating to a host of Church & Dwight's products without even claiming that any one of them is actually based on misappropriated information or technology. That is flatly impermissible. It would not only allow a party to use discovery to search for a claim, but it would permit discovery before Church & Dwight is on notice of the

4

wrongdoing of which it is accused. It would also make discovery ungovernable: What would the limits be? Every product Church & Dwight manufactures?

In short, as courts have repeatedly instructed, Plaintiff should be required to state an actual claim before discovery can commence. As we demonstrate in Point I below, Church & Dwight has made this argument before Judge Wolfson, and the District Court should be permitted to rule on it before any discovery proceeds, let alone on an expedited basis.

In any event, Plaintiff has utterly failed to carry its burden to justify such extraordinary relief. The only evidence offered by Plaintiff in support of this motion is the declaration of Dr.

███████████████████████████████████████████████████████

his medical condition is the basis of this motion, Plaintiff should have submitted the report of an independent doctor who could provide the Court with an opinion as to Dr. Gardos's cognitive functions and prognosis.

Even assuming the veracity of everything Dr. Gardos claims about his unnamed condition, Plaintiff still fails to meet either standard employed in consideration of motions to expedite discovery. Among the defects in Plaintiff's application is the absence of any pending or foreseeable motion for a preliminary injunction, the failure by Plaintiff to demonstrate any probability of success on the claims for which it seeks discovery, and the absolute failure by Plaintiff to narrow its discovery demands. Each of those reasons mandates the denial of this motion. When Plaintiff's dubious claim of irreparable harm is added to the mix – that Dr. Gardos is needed to assist in evaluating discovery *from Church & Dwight* – it is clear that the motion has no merit whatsoever. We address this in Point II below.

5

Finally, if any expedited discovery is appropriate at this juncture, it should only apply to discovery of Dr. Gardos himself. There is simply no justification to use his condition as a basis to order expedited, wholesale discovery of Church & Dwight. Plaintiff is a corporate entity and, presumably, its counsel and other officers fully "debriefed" Dr. Gardos before commencing this ███████████████████████████████████████████████████████████ If his condition does inconvenience Plaintiff in preparing its case, it is something Plaintiff should have considered in waiting years before bringing this action. It is not a circumstance that justifies prejudicing Church & Dwight.

Indeed, Plaintiff not only asks this Court to permit immediate, wide-scale discovery of Church & Dwight, but to deny Church & Dwight the right to conduct an oral deposition of Dr. Gardos, whom Plaintiff describes as its key person. This highlights the inconsistencies and questionable statements in the Gardos declaration. On the one hand, Plaintiff claims a need to expedite the discovery process so that Dr. Gardos can evaluate, analyze, and interpret large volumes of complex material. ████████████████████ ████████████████████████ Obviously, if Dr. Gardos' condition poses a legitimate threat that he will become unavailable, he should be examined by an independent physician to determine whether he is competent to provide any testimony at all and, if he is able to do so, whether he is able to testify on oral questions. But there is simply no need to address these important questions now, and certainly no basis to do so on the present record.

To summarize, Plaintiff has not met its burden to justify the expedited discovery of Church & Dwight that it seeks, or to curtail discovery of Dr. Gardos. In any case, consideration of these issues should await the outcome of the motions before the District Court.

6

**ARGUMENT**

**I.    IT IS INAPPROPRIATE TO EXPEDITE DISCOVERY BECAUSE THERE IS A MOTION PENDING BEFORE THE DISTRICT COURT TO STAY ALL DISCOVERY IN THIS MATTER**

Most pointedly, this motion is premature.  Currently pending before Judge Wolfson is Church & Dwight's Motion to Stay Discovery pending resolution of the concurrently filed Motion to Dismiss the First Amended Complaint.  Plaintiff has come to this Court seeking a complete end-run around that process.

Church & Dwight's motion to stay all discovery is inextricably tied to the motion to dismiss, which is based on both substantive grounds and pleading deficiencies.  As shown in Church & Dwight's memorandum of law in support of that motion (2/5/13 Barry Decl. Ex. A), the allegations of the Amended Complaint cannot stand as a matter of law.  For example, a number of Plaintiff's claims revolve around the notion of some promise of partnership by Church & Dwight to Plaintiff, despite the fact (discussed above) that the contracts contain language expressly disavowing any such arrangement.  (2/5/13 Barry Decl. Ex. A at 16).  In order to properly determine the threshold question of whether discovery is at all appropriate in this matter, or what the proper bounds should be, the motion to dismiss should be decided first.

There is a second reason to stay discovery at this time -- a reason that warrants special scrutiny of any application to expedite discovery in a case like this one.  At its core, Plaintiff appears to be alleging that Church & Dwight obtained information from Plaintiff and then proceeded to misuse it in the creation of new products.  Plaintiff has, however, failed to allege with any specificity what this information was, how it was used or what products were developed.  In the Amended Complaint, Plaintiff refers generally to "numerous products" that it developed for Church & Dwight, including "dozens of designs and new prototypes."  (Am. Compl. ¶ 16(d)).  So too, Plaintiff repeatedly alleges that Church & Dwight offered for sale

7

"adult novelty items" or an "adult sexual toy line." (Id. ¶¶ 24, 30, 50.) *However, not once does Plaintiff identify what those products are.* Not a single such product is ever specified, by words or description, anywhere in the pleading. Similarly, Plaintiff claims that Church & Dwight extracted "confidential information" from Plaintiff, without, again, ever detailing what this supposed information entailed. (Id. ¶¶ 24, 30, 45).

As our brief to the District Court confirms, the law is clear that a Plaintiff making such claims must specifically identify the alleged information and the products which are supposedly based on its misappropriation before discovery proceeds. (Barry Decl. Ex. A at 23-25). Plaintiff has utterly failed to do so. In such circumstances, no discovery is warranted, let alone wholesale, expedited discovery.

The infirmity of the Amended Complaint is underscored by the proposed discovery that Plaintiff now seeks. For example, Plaintiff requests documents related to "each adult sexual toy product produced by C&D since 2005." (Abbey Dec. [Dkt 24-8] Ex. E, Request 2). For all such products, Plaintiff requests extensive information, including the location of manufacture and sale. (Id.). In addition, Plaintiff demands all product specifications, pricing, and sales information for the Vibrating Mini, Vibrating Touch, Multi-Speed Vibrating Ring, Twister Intimate Massager, Tri-Phoria Intimate Massager, and Pulse Intimate Massager. (Id. Ex. D Request 6). None of these products is mentioned anywhere in the Amended Complaint.

It is thus clear that Plaintiff wants to obtain discovery to see if it can craft some new, fanciful claim based on the material it receives. This flips logic – and the law – on its head. As the courts have repeatedly recognized in related contexts, Plaintiff should not be entitled to discovery unless and until it adequately pleads that it has a claim in the first place.

8

That is particularly true where, as here, Plaintiff is a competitor of Church & Dwight. There is simply no basis, and no precedent, to permit Sawhorse to obtain extensive discovery about Church & Dwight's products, including such sensitive information as product specifications and pricing and sales data, before Plaintiff identifies what products are allegedly based on misappropriated, supposedly confidential information, or even explains what the allegedly confidential information is. This issue is squarely before the District Court. Judge Wolfson should be allowed to rule on that question before this application is heard.

## II.   IN ANY CASE, PLAINTIFF HAS WHOLLY FAILED TO MEET ITS BURDEN UNDER EITHER STANDARD APPLICABLE TO A MOTION TO EXPEDITE DISCOVERY

Plaintiff correctly explains that courts within the Third Circuit have applied both the *Notaro* standard and the "reasonableness test" in deciding motions for expedited discovery. (Pl.'s Mem. of Law in Supp. of Mot. For Expedited Discovery [Dkt. 24-1] ("Pl.'s Br.") 5-6). Plaintiff has failed to carry its burden under either.

### A.   The Notaro Standard

The *Notaro* standard establishes a "four-prong test strongly reminiscent of the test for weighing an application for a preliminary injunction." *Gucci Am., Inc. v. Daffy's, Inc.*, Civ. No. 00-4463 (AMW), 2000 WL 1720738, at *5 (D.N.J. Nov. 14, 2000). Thus, to satisfy this standard, a party seeking expedited discovery must demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *Id.* at *5-6 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982))

As recognized by Plaintiff, the *Notaro* standard is generally considered more stringent than the reasonableness test. First, Plaintiff must demonstrate that it will suffer some

9

"irreparable injury" if the motion is not granted. *Better Packages, Inc. v. Zheng*, Civ. No. 05-4477 (SRC), 2006 WL 1373055, at *2 (D.N.J. May 17, 2006) (quoting *Notaro*, 95 F.R.D. at 405). Plaintiff alleges that it will suffer such harm if it "cannot be guaranteed the help of Dr. Gardos, whom it will rely heavily upon to verify or contradict facts or claims alleged by Church & Dwight." (Pl.'s Br. 10). As a threshold matter, it is questionable whether the absence of an allegedly vital witness constitutes irreparable harm. Notably, Plaintiff fails to cite to a single case to support this conclusion. Regardless, instead of putting forward the sworn statement of an independent doctor, ███████████████████████████ ████████████████ Plaintiff only offers the declaration of Dr. Gardos himself. That declaration is not only self-serving, but the statements raise issues of credibility. For example,

████████████████████████████████████████████████████████

That aside, there are myriad reasons why Plaintiff's argument about irreparable injury fails. First, Plaintiff fails to explain why it waited so long to initiate this action. The contracts at issue were signed some six and seven years ago and there is no explanation why this suit was not brought years earlier. This is particularly true given Plaintiff's contention that much of the behavior giving rise to the Amended Complaint occurred before the contracts were even signed.[3]

Second, even assuming the veracity of Dr. Gardos' statements, Plaintiff – a corporate entity – has failed to demonstrate why it would suffer irreparable harm if he is not available to

---

[3] For example, Plaintiff alleges that "this case is about a business venture which ultimately produced three contracts, *but in getting to those contracts*, Church & Dwight violated the covenant of good faith and fair dealing, committed fraud on Sawhorse, and benefitted far more than they paid." (Pl.'s Br. 11) (Emphasis supplied).

10

assist in discovery. Plaintiff has defined four individuals as falling within the definition of "Sawhorse" in its Rule 30(b)(6) request – Brett Nachman, Amy Levinson, Sandor Gardos, and Beth/Ben Doyle. (Abbey Dec. [Dkt 24-8] Ex. A at 4). Amy Levinson, for example, has been a "Senior Adviser" to Sawhorse since 2000. (2/5/13 Barry Decl., Ex. C). This covers the entire duration of the relationship between Plaintiff and Church & Dwight, and belies any contention that Dr. Gardos is the only person with knowledge of the alleged underlying events.

In any case, if Dr. Gardos is truly the irreplaceable lynchpin of Plaintiff's case, he was undoubtedly consulted during the investigation and drafting of the Amended Complaint and at all stages since. The rules of practice require no less. But whether Plaintiff's counsel or other representatives of Sawhorse did so or not, they certainly had the opportunity to be educated by Dr. Gardos. If they failed to do so, they should not benefit from a situation they created and which they could have avoided, especially if it means prejudicing Church & Dwight.

Finally, it bears repeating that Plaintiff is a direct competitor of Church & Dwight. Thus, even if Plaintiff were entitled to the discovery it seeks, much of it would have to be produced pursuant to a protective order for "attorney's eyes only." That would render the sole justification for this motion moot, as Dr. Gardos would not be able to review the material at all.

This is not an idle concern. Here are examples of the information Plaintiff seeks:

- "All documents and things related to any prototypes, depicting adult sexual products, created by and/or for C&D since 2005, whether ever commercialized or not." (Abbey Dec. [Dkt 24-8] Ex. D, Request 4);

- "Any and all documents and things for each of the C&D products listed below, including but not limited to these individual products or any packages or kits that include one or more of these products, regarding (a) the date of first sale (b) the total sales, per month, since 2006 (c) pricing, per month, since 2006, (d) costs, per month, since 2006, and (e) product specifications and any changes made since 2006 [listing six items]." (Id. Request 6); and

11

- "Please describe in detail all manufacturing activities in China, including, but not limited to, G-High and/or the Manning Corporation, prior to working with Sawhorse and/or Dr. Sandor Gardos." (Id. Ex. E, Request 6).

████████████████████████████████████████████████████████████████████

& Dwight cannot be expected to provide confidential, sensitive information to a direct competitor without appropriate protections, especially one intent upon preventing it from selling its products.

Second, Plaintiff must demonstrate "some probability of success on the merits." *Better Packages*, 2006 WL 1373055, at *2 (quoting *Notaro*, 95 F.R.D. at 405). In its attempt to satisfy this element, Plaintiff first claims that "there is a high probability that the breach of contract claims [Counts 1, 2, and 3] will succeed." (Pl.'s Br. 11). Remarkably, however, Plaintiff elsewhere argues in its motion that the expedited discovery concerns only the non-contract claims. (Pl.'s Br. 9). If Plaintiff is seeking discovery on only the fraud and other non-contract claims, it is irrelevant whether it is likely to succeed on the contract causes of action.

In any event, to support its argument that it is likely to succeed on the three non-contract claims, Plaintiff does nothing more than refer back to the Amended Complaint and the Declaration of Dr. Gardos. (Pl.'s Br. 11-12). This fails to demonstrate any "reasonable probability" of success on the merits, and merely restates the conclusory allegations currently at issue in the motion to dismiss before the District Court.

In fact, as Church & Dwight's motion to dismiss before the District Court makes clear, there is no merit to Plaintiff's claims, including the non-contract counts. That is most easily seen by comparing the allegations about a promised partnership with Plaintiff's written agreement specifically disavowing any such relationship. (*See*, pgs. 7-8, above, and Church & Dwight's

12

Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (2/5/13 Barry Decl.) Ex. A, at 16). In short, Plaintiff cannot possibly demonstrate a probability of success.

Plaintiff fares no better in dealing with the final two factors it must satisfy: a connection between the irreparable harm and the discovery sought, and the balancing of injury. *Better Packages*, 2006 WL 1373055, at *2 (quoting *Notaro*, 95 F.R.D. at 405). As explained above, the discovery Plaintiff seeks does not relate to any products or allegedly confidential information identified in the Amended Complaint. It follows that Plaintiff cannot point to any harm that would result if discovery is not expedited. On the other hand, expedited discovery at this juncture opens Church & Dwight to the risk that Plaintiff will obtain proprietary information that it would never otherwise be entitled to see. Church & Dwight should not have to bear such a risk in the absence of a stated, cognizable claim. Here, it is clear that Plaintiff will use the discovery not to prove its claims, but to invent one. In either event, the balancing of potential injury augurs completely in favor of denying this motion.

### B.    The Reasonableness Test

Under the reasonableness test, "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Barbieri v. Wells Fargo & Co.,* Civ. No. 09-3196 (RBS), 2012 WL 3089373, at *3 (E.D.Pa. July 27, 2012) (quoting *Entm't Tech. Corp. v. Walt Disney Imagineering*, Civ. No. 03-3546, 2003 WL 22519440, at *4 (E.D.Pa. Oct. 2, 2003)). While any application of the reasonableness standard "depends on the actual circumstances of each case," there are several factors which are consistently reviewed in the consideration of such motions. *Better Packages, Inc. v. Zheng*, Civ. No. 05-4477 (SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006). Among these factors are (1) whether a motion for a preliminary injunction is

13

pending, (2) how far in advance of the formal start of discovery the request is made, (3) whether the discovery requests are narrowly tailored, (4) the purpose of the requested early discovery, (5) whether the discovery burdens the defendants, and (6) whether the defendants are able to respond to the requests in an expedited manner. *Id.* (citations omitted).

These considerations clearly militate against granting Plaintiff's motion. First, there is no preliminary injunction motion pending or foreseeable. Indeed, Plaintiff waited almost six years after the final agreement was signed before filing this action. This is consistently one of the most important factors, if not the single most important factor, referenced by courts undertaking this evaluation. *See, e.g., Exclusive Supplements, Inc. v. Abdelgawad*, Civ. No. 12-1652, 2013 WL 160275, at *1 (W.D.Pa. Jan. 15, 2013) ("The parties shall be allowed to engage in expedited discovery of information *relevant to the upcoming preliminary injunction hearing only*.") (emphasis supplied); *Nest Intern., Inc. v. Balzamo*, Civ. No. 12-2087 (JBS/KMW), 2012 WL 1584609, at *2 (D.N.J. May 3, 2012) ("The Court finds good cause to order at least some expedited discovery, as it appears reasonably necessary to enable this Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing.") (citations omitted); *Entm't Tech. Corp. v. Walt Disney Imagineering*, Civ. No. 03-3546, 2003 WL 22519440, at *5 (E.D.Pa. Oct. 2, 2003) ("First, there is no pending preliminary injunction hearing for which the parties need to prepare, rendering the need to expedite discovery less urgent.").

Second, the timing of this request warrants rejection of any expedited discovery. Plaintiff has made this demand while Church & Dwight's motion to dismiss the Amended Complaint is pending before Judge Wolfson; a motion which, if successful, will greatly alter the bounds of discovery between the parties. Further, this motion is being made far in advance of the time

14

when discovery would normally begin. Indeed, discovery would not ordinarily start until the Court sets an initial scheduling conference, and after the parties meet and confer in accordance with Rule 26(f) of the Federal Rules of Civil Procedure.

Third, as shown above, the fact that Plaintiff's discovery requests are overly broad, burdensome and seek large categories of material stretching back several years is yet another factor for denying expedited discovery. *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, Civ. No. 98-2782, 1998 WL 404820, at *2 (E.D.Pa. July 15, 1998) ("However, courts generally deny motions for expedited discovery when the movant's discovery requests are overly broad.") (citations omitted). Plaintiff attempts to mitigate the excessiveness of its demands by falsely representing to the Court that the "requests also concern only Counts IV, V, and VI, and seek evidence directly related to those counts." (Pl.'s Br. 9). This is belied by the discovery requests themselves, which are also plainly directed to the breach of contract claims (Counts I, II, and III). For example, they include a demand for all "Internal and External Communications and Documents regarding the formation, drafting, and signing of the following agreements between Plaintiff and C&D." Plaintiff then lists the Confidentiality, Option, and Technology Licensing agreements. (Abbey Dec. [Dkt 24-8] Ex. A, Request 1). Plaintiff also demands discovery concerning all payments and methods of payment between Sawhorse and Church & Dwight, in part explicitly in relation to the contracts between them. (Id., Requests 7, 9). Plaintiff's mischaracterization of its discovery demands highlights the true purpose of Plaintiff's motion – to obtain as much information as it can, as quickly as possible, to try to concoct a claim, or worse, to learn confidential information about its competitor.

Finally, Plaintiff fails to show why expedited discovery is necessary to avoid irreparable harm. Plaintiff attempts to meet that requirement through the uncorroborated declaration of

15

Dr. Gardos. But as we have shown, that declaration not only fails to establish irreparable harm; it also raises serious questions concerning the bona fides of his averments.

In sum, Plaintiff has failed to demonstrate that it is entitled to any expedited discovery at this time.

**III.    IF DISCOVERY PROCEEDS AFTER THE DISTRICT COURT RULES ON THE MOTIONS BEFORE IT, CHURCH & DWIGHT SHOULD BE PROVIDED AN OPPORTUNITY TO RESPOND TO PLAINTIFF'S REQUEST TO LIMIT DR. GARDOS' DEPOSITION TO WRITTEN QUESTIONS AFTER IT HAS HAD THE OPPORTUNITY TO REVIEW AN INDEPENDENT MEDICAL EVALUATION OF DR. GARDOS**

For the reasons shown above, no expedited discovery is warranted at this time. If any expedited discovery is to be had, it should only be of Dr. Gardos, and then only if an independent medical evaluation warrants that. If the Court determines on the basis of such an examination that Dr. Gardos is competent enough to testify and, in fact, should be deposed on an expedited basis, Church & Dwight respectfully requests the opportunity to address Plaintiff's request for deposition by written questions. Without knowing the true extent of Dr. Gardos' condition and any physical or mental limitations that he may have, Church & Dwight is simply not in a position to respond adequately to Plaintiff's request to do away with Church & Dwight's right to depose Dr. Gardos by oral examination or to agree that testimony by Dr. Gardos in any form – written or oral – would be competent testimony by a mentally competent witness.

The present record concerning Dr. Gardos' medical condition contains contradictions, inconsistencies and raises a number of serious questions. The following are some representative examples:

16



Given the foregoing, it is not being insensitive to Dr. Gardos' condition to insist that he undergo a full independent examination and otherwise provide corroboration for his condition before Church & Dwight is denied what is apparently a critical deposition.

Even if Dr. Gardos' condition is as Plaintiff describes it, it does not mean that accommodations cannot be made so that he can be deposed at the appropriate time. For



The point here is that there are not enough facts before the Court to determine now whether Church & Dwight should be denied the opportunity to take an important deposition by oral questions. More importantly, as we have shown above, there is no need for the Court to entertain this issue now at all.

## CONCLUSION

For the foregoing reasons, Defendant Church & Dwight respectfully requests that the Court deny Plaintiff's Motion for Expedited Discovery.

Dated:  February 5, 2013

Respectfully submitted,

/s/ John P. Barry
John P. Barry
PROSKAUER ROSE LLP
One Newark Center
Newark, NJ 07102
Tel:  (973) 274-6081
Fax:  (973) 274-3299
jbarry@proskauer.com

Richard M. Goldstein *
Baldassare Vinti *
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Pro Hac Vice application to be filed*

*Attorneys for Defendant Church & Dwight Co., Inc.*

18