John P. Barry
**Proskauer Rose LLP**
One Newark Center
Newark, NJ 07102
Tel: (973) 274-6081
Fax: (973) 274-3299
jbarry@proskauer.com

Richard M. Goldstein *
Baldassare Vinti *
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
* *Pro Hac Vice admission pending*

*Attorneys for Defendant
Church & Dwight Co., Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAWHORSE ENTERPRISES, INC.,<br><br>               Plaintiff,<br>   -against-<br><br>CHURCH & DWIGHT, INC.,<br><br>               Defendant. | Civ. No. 3:12-CV-06811 (FLW) (TJB)<br><br>**Return Date: February 19, 2013**<br><br>*Document Electronically Filed*<br><br>**Oral Argument Requested** |

**DEFENDANT CHURCH & DWIGHT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND TO STAY DISCOVERY PENDING RESOLUTION OF THAT MOTION**

## TABLE OF CONTENTS

<u>Page</u>

Table Of Authorities ..................................................................................................ii

Preliminary Statement ............................................................................................... 1

Argument .................................................................................................................. 4

I.     Plaintiff's Opposition Papers Confirm That The Breach Of Contract Claims Are Inadequately Pled ................................................................. 4

II.    Counts IV, V And VI Should Also Be Dismissed ............................... 8

III.   A Stay Of Discovery Is Necessary, Especially Given Plaintiff's Attempt To Obtain Expedited, Wholesale Discovery ....................................... 11

Conclusion .............................................................................................................. 12

i

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Dicuio v. Brother Int'l Corp.*,
    Civ. No. 11-1447 (FLW), 2012 WL 3278917 (D.N.J. Aug. 9, 2012) ...................................... 10

*Rainbow Apparel, Inc. v. KCC Trading, Inc.*,
    Civ. No. 9-5319 (DMC / MF), 2010 WL 2179146 (D.N.J. May 26, 2010) .............................. 7

## PRELIMINARY STATEMENT

Plaintiff's opposition confirms what is clear from the First Amended Complaint ("FAC") – it has apparently become unhappy with the agreements it signed and is searching for a claim to extract money beyond what it negotiated. Plaintiff's papers thus describe the licensing fee it receives as "paltry" and "wholly insufficient and not the level of compensation contemplated in earlier discussions." (Opp. at 5 and 10)[1] That, of course, begs the question why it chose to enter into the agreements. In any case, seller's remorse is simply not the basis of a cognizable claim.

The essence of Plaintiff's claims is that after the parties entered into three agreements, Church & Dwight ("C&D") misappropriated Plaintiff's confidential information to develop and market various products without offering Plaintiff the "partnership" it expected. To that end, Plaintiff alleges that "Defendant has nurtured an expectation of partnership in adult novelty item production with Plaintiff purposefully, then willfully breached all three agreements and severed all ties with Plaintiff once all desired information had been gathered." (FAC ¶40) As C&D showed in its opening brief, putting aside that any "expectation" of partnership is belied by express language in the agreements themselves, not once in the FAC does Plaintiff identify the confidential information that C&D allegedly misappropriated or the name of a single C&D product sold on the open market that is allegedly based on that supposedly misappropriated technology. *Plaintiff does not dispute this in its opposition papers.* Instead, Plaintiff argues that C&D "will have the opportunity to amass the facts it seeks during the discovery process." (Opp. at 3) This approach to pleading is precisely what the Supreme Court rejected in *Iqbal* and *Twobly*. It is also exactly what Rule 9(b) forbids in a case alleging fraud, as does the FAC here.

Leaving no doubt that Plaintiff is attempting to use this litigation to search for a claim, days after C&D filed its motion to dismiss the FAC and for a stay of discovery pending decision

---

[1] As used herein, "Opp." refers to Plaintiff's opposition memorandum, Dkt 30.

on that motion, Plaintiff filed a motion before Magistrate Bongiovanni seeking expedited and wholesale discovery extending far beyond the allegations of the FAC.[2] For example, Plaintiff demands "all documents and things related to *any prototypes*, depicting adult sexual products, created by and/or for C&D since 2005, *whether ever commercialized or not*." (Abbey Decl. [Dkt 24-8] Ex. D, Request 4) In other words, Plaintiff wants expedited discovery about a vast array of C&D's products that are never identified in the FAC, purportedly to find out if any of them are based on allegedly confidential information that is likewise never identified or explained in the FAC. This turns the notion of pleading and discovery on its head. Clearly, Sawhorse wants that discovery to search for a claim, not to pursue one.

As C&D also showed in its opening brief, Plaintiff's allegations not only fail under the pleading requirements of Rules 8 and 9(b), they also fail as matter of law. The notion that Plaintiff was wronged because it never received the "partnership" it supposedly "expected" is utterly belied by the agreements it signed. Plaintiff's response to the clear and unmistakable language of the agreements is that an expectation of partnership originated outside of the agreements. As discussed below, this argument is not only at odds with language of the agreements themselves, but it is directly contrary to the allegations of the FAC:

> From a legal perspective, this is a civil action for several contract claims. Plaintiff and Defendant entered into several contracts that allowed C&D to obtain an extremely valuable business that, among other things, develops, designs, manufactures, produces and distributes adult novelty items into large, mainstream channels. These agreements include: (1) a Confidentiality Agreement, (2) an Option Agreement, and (3) a Technology License Agreement. Defendant has breached all three contracts with respect to the performance of each individual contract as well as the implied covenant of good faith and fair dealing, committed fraud, and failed to adequately compensate Sawhorse for its services as detailed more fully below.

---

[2] Curiously, Plaintiff's motion for expedited discovery failed to mention that there is pending before this Court a motion to stay discovery.

(FAC ¶2) Those allegations leave no doubt that, even according to Plaintiff, the relationship between the parties is grounded in and governed by their agreements. The claims in the FAC, however meritless, relate directly to the subject matter of those agreements. Any notion that there is some other arrangement that gave rise to an expectation of partnership is absurd; in any case, it finds no support in the FAC.

Indeed, the nature of the agreements confirms that the scope of the relationship between Plaintiff and C&D, at most, is one of licensor-licensee; nothing more. ███████████
████████████████████████████████████████████
████████████████████████████ The relationship created by that agreement runs contrary to any notion of a contemplated partnership. At most, it envisioned an arm's length licensing arrangement. That is exactly what the ensuing Technology License Agreement created. It simply permits C&D to market a particular product (a finger vibrator) for which it has regularly paid a royalty and fee.

In short, the nature of the agreements belie any notion that a "partnership" was anticipated. The nail in that coffin is the express language of the Technology License Agreement, which was the culmination of the parties' dealings. In unmistakable, unambiguous words, it specifically disclaims any partnership arrangement, going so far as to expressly preclude the parties from characterizing their relationship as such.

Plaintiff's indifference to the rules of pleading is matched by its disregard for the rules of motion practice. Remarkably, after acknowledging that "a court may consider only the complaint, exhibits attached to the complaint, matters of public records and indisputably authentic documents if the complainant's claims are based on those documents" (Opp. at 6 n. 2),

3

Plaintiff submitted a thirty-one paragraph declaration from its CEO, Dr. Sandor Gardos, as part of its opposition papers. That declaration should not be considered by the Court. But even putting aside the impropriety of that submission, this self-serving declaration only manages to underscore the inadequacy of the FAC. Like the pleading itself, Dr. Gardos fails to identify a *single product* that C&D sells on the open market with the information that it supposedly misappropriated, or a *single detail* regarding what this information actually entailed. For example, he alleges that C&D "offered for sale" some wholly unnamed products "in the latter half of 2008." Exactly what products, and what information they were allegedly based upon, remain a mystery. The only possible conclusion is that they don't exist – and neither does any promise of partnership.

For the same reasons, discovery should be stayed pending decision on this motion. The law – and fairness – simply does not allow a party to bring wholly inadequate claims like these, including fraud, and then try to fill in the holes through discovery. The vice of that strategy is all the more pronounced since Plaintiff is a competitor of C&D. There is simply no justification to permit it any discovery into obviously proprietary information about C&D's products (let alone the wide-ranging foray it wants on an expedited basis) unless Plaintiff has first stated the factual basis for its allegations and provided notice to C&D of the wrongdoing of which it is accused. Indeed, what would the limits of such discovery be? Every product or prototype C&D ever considered selling, even though not one is mentioned in the FAC?

## ARGUMENT

### I. PLAINTIFF'S OPPOSITION PAPERS CONFIRM THAT THE BREACH OF CONTRACT CLAIMS ARE INADEQUATELY PLED

In its opening brief, C&D demonstrated that the FAC, already amended once, fails to specify any C&D product whatsoever that was allegedly developed, conceived or marketed

4

based on information or ideas (or anything else) that was allegedly taken from Plaintiff – beyond the product that is the subject of their Technology License Agreement. *Plaintiff does not dispute this.* Instead, Plaintiff argues that it should be permitted to "wait for discovery" before it be required to provide any detail. (*See, e.g.*, Opp. at 9: "Further elaboration of the full spectrum of adult novelty items is more appropriate for discovery."). This turns the Supreme Court's holding in *Iqbal* and *Twombly* on its head and would permit Plaintiff to have wholesale access to C&D's proprietary and confidential information before providing C&D with fair notice of what the claim is and the grounds upon which it rests. This is wholly inappropriate and raises the substantial concern that Plaintiff will try to use C&D's information to concoct a claim or to compete in the marketplace. (*See* Opening Br.[3] at 23-24)

The breach of contract claims fail in another way: they do not properly allege damages resulting from the supposed breach. Plaintiff acknowledges this burden, and then ignores it. For example, with respect to the Confidentiality Agreement, Plaintiff claims that it was damaged because the "license that was offered was wholly insufficient and not the level of compensation contemplated in earlier discussions." (Opp. at 10) The fact that Plaintiff is unhappy with the terms of the agreement that it voluntarily signed provides no basis for seeking damages. Nor, of course, does that statement give any hint of what those damages would be.

Similarly inadequate is the allegation that Plaintiff was damaged when C&D "released other products based on the information provided by Sawhorse without a license from Plaintiff." (Id. (citing FAC ¶ 21)) Again, there is no specificity whatsoever in this allegation; nothing about what products were released or what information they were based upon. It is therefore not surprising that the claim also fails to recite what damages were allegedly suffered. Moreover, the paragraph of the FAC that Plaintiff cites to meet its burden to plead damages for a breach of

---

[3] As used herein, "Opening Br." shall refer to C&D's opening brief, Dkt 18.

the Confidentiality Agreement – Paragraph 21 – has nothing to do with that agreement. It refers only to the Technology License Agreement.

Plaintiff's claimed damages regarding the Option Agreement are similarly inadequate, to the extent they can even be understood. For example, the opposition brief states: "FAC's allegations of damages incurred by Plaintiff as a result of Defendant's breach include assertions of fact that the license that was offered was wholly insufficient and not the level of compensation contemplated in earlier discussions." (Opp. at 12) Apparently, Plaintiff contends that its damages for C&D's alleged breach of the Option Agreement flow from having thereafter signed a license agreement that provides for lesser compensation than was earlier "contemplated." This is completely defective as a matter of pleading and substance. First, there is nothing in the FAC that alleges what compensation was supposedly "contemplated." Second, there is nothing in the Option Agreement that speaks to what the royalty or other compensation would be in a license agreement if C&D exercised the option to enter into one. To the contrary, the Option Agreement expressly states: ▮

▮

Any claim that that agreement was breached because the payment terms of the Technology License Agreement that were later negotiated and included in that agreement were "inadequate" or "paltry" is outlandish on its face. The same is true of any claim that the compensation

6

Plaintiff agreed to accept under the Technology License Agreement is less than Plaintiff earlier "contemplated." Any other result would turn the law of contracts on its head.

In short, there is nothing in the FAC to support any claim by Plaintiff that would allow it to escape the terms of the agreements it freely negotiated and chose to sign.

Regarding its claim for a breach of the Technology License Agreement (Count III), Plaintiff argues that it alleged "that C&D has failed to pay all moneys owed to Sawhorse per the contract." (Opp. at 14) In its next breath, Plaintiff claims that it "cannot state the amounts due, when they were due, or how breach occurred" because C&D supposedly will not permit Plaintiff to look at its sales figures. (Id.) Because its prayer for relief includes a request for an accounting, Plaintiff then asserts that it has cured the pleading defects in its Count III contract claim. Nothing could be further from the truth.

First, the Technology License Agreement contains no obligation on C&D's part to provide an accounting, and there is no allegation in the FAC to the contrary. That is a bargained for right, and it is absent from the contract. Second, the FAC contains no allegation (nor could it) that the relationship between the parties would give rise to a right to an accounting. Such a right is based upon three grounds, the first of which is a fiduciary relationship. *Rainbow Apparel, Inc. v. KCC Trading, Inc.*, Civ. No. 9-5319 (DMC / MF), 2010 WL 2179146, at *6 (D.N.J. May 26, 2010). The FAC not only fails to allege that, but the Technology License Agreement specifically disclaims any such relationship. (Barry Decl. [Dkt. 17] Ex. C at ¶ 25: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) That provision simply acknowledges that the agreement was an arm's length, commercial license, nothing more. It is easy to understand the importance of that clause to C&D. It would not lightly agree to open its books

7

and records to a competitor. If it were to make such an agreement, it would surely negotiate the limits on what would have to be disclosed.

Finally, there is nothing in the FAC that alleges what the accounting would entail. Plaintiff has not identified the specific products that it thinks were sold in breach of the agreement. Does Plaintiff contend that it is entitled to an accounting of every product that C&D sold? Asking for an "accounting" does not cure those fatal omissions in the contract claims. In any event, having agreed that the agreement does not give rise to a partnership, agency or relationship of trust – the cornerstones of a fiduciary relationship – Plaintiff cannot now seek remedies based on that relationship, especially when the FAC does not allege otherwise.

In short, the FAC fails to state a claim for breach of any of the three agreements at issue and should be dismissed with prejudice.

## II. COUNTS IV, V AND VI SHOULD ALSO BE DISMISSED

First, with respect to the fraud claim (Count V), C&D's opening brief shows that the FAC fails to plead facts constituting fraud: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other party would rely on it; (4) reasonable reliance by the other party; and (5) resulting damages. (Opening Br. at 19-21) In response, Plaintiff cite to paragraphs 12-21 of the FAC. However, nothing contained in those paragraphs (or any other paragraph of the FAC) sets forth who at C&D supposedly made the alleged misrepresentations, how they were made, to whom they were made, what exactly was said, or when they were made. On this basis alone, Count V should be dismissed.

Recognizing the deficiencies of the FAC, Plaintiff offers to amend its amended complaint to provide additional information. (Opp. at 26 n. 16) Plaintiff's offer should be rejected and the FAC should be dismissed with prejudice because Plaintiff's fraud claim fails as a matter of law. As C&D showed in its opening brief, the allegation that C&D committed fraud by

8

misrepresenting to Plaintiff that it would enter into some future partnership is belied by the agreements that Plaintiff signed. (Opening Br. at 16) Plaintiff's response is that the expectation of partnership originates outside of the agreements. The FAC and the agreements tell a contrary story. Indeed, as quoted in the preliminary statement, *supra*, Paragraph 2 of the FAC could not be clearer that the basis for Plaintiff's claim of a promised partnership is grounded in the very subject matter of the three agreements that it voluntarily entered into. Similarly, the agreements themselves make clear that the scope of the relationship between the parties is governed by their terms – terms that, at most, create a licensor-licensee relationship; not one of partnership. (*See, e.g.,* Technology License Agreement which recites that ' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

With respect to Count IV, C&D's opening papers showed that the claim for breach of the covenant of good faith is inadequately plead because, among other things, the FAC fails to identify how C&D acted in bad faith or with malicious motive to deny Plaintiff the benefit the bargain originally intended when the parties entered into the Confidentiality, Option and Technology License agreements. (Opening Br. at 11-14) Apart from offering to amend its pleadings yet again and provide a third complaint (Opp. at 17 n. 8), Plaintiff's response is to repeat the vague allegations of the FAC that C&D acted in bad faith by creating an expectation of partnership, extracting and utilizing unidentified "information" for its own profits and goals, and then breaching its agreements once all the desired information had been gathered. (Id. at 18) Glaringly missing from Plaintiff's response is any identification in the FAC of what information C&D allegedly extracted, how C&D allegedly failed to fulfill the agreements or how Plaintiff

9

was denied the benefit of the bargain originally intended when it entered into the agreements. Count IV should therefore be dismissed.

As C&D also demonstrated in its opening papers, Court IV should also be dismissed as a matter of law because "an implied covenant of good faith claim cannot be based on a defendant's violation of an express contract term." *Dicuio v. Brother Int'l Corp.*, Civ. No. 11-1447 (FLW), 2012 WL 3278917, at *12 (D.N.J. Aug. 9, 2012). Plaintiff does not dispute this basic tenet of contract law in its opposition brief. Instead, Plaintiff argues that it should be permitted to plead a claim for breach of the covenant of good faith because it is premised, in part, on C&D's refusal to enter into a promised partnership. Because, according to Plaintiff, the promised partnership was not included as an express term of any contract, it may form the basis of a claim for breach of the covenant of good faith. Plaintiff's argument is meritless because the agreements that form the basis for Plaintiff's claim for breach of the covenant of good faith do in fact contain express language disavowing any notion of partnership. Rather than repeating the relevant sections of those agreements, C&D references pages 4-6 of its opening brief.[4] Because Count IV of the FAC fails as matter of law, it should be dismissed with prejudice.

Lastly, with respect to Count VI, C&D's opening papers demonstrated that Plaintiff's quantum meruit claim must be dismissed because it is inadequately pled. Specifically, C&D called out the fact that the FAC fails to allege, among other things, any basis for a determination of the reasonable value of the services which Plaintiff claims C&D received. Plaintiff's opposition does not even attempt to address this fatal deficiency let alone the basis for any expectation of compensation above and beyond that for which Plaintiff bargained as set forth in the terms of the parties' agreements.

---

[4] Plaintiff's argument that it should be permitted to plead a claim for breach of the covenant of good faith in the alternative is a red herring. Plaintiff's claim fails, not for pleading in the alternative, but because the express language of the agreements that Plaintiff entered into disavows any notion of partnership.

Moreover, Plaintiff has no response to case law cited by C&D which makes clears that where, as here, contractual terms govern the relationship of the parties, an equitable claim for quantum meruit cannot stand. (Opening Brief at 22) Indeed, the FAC acknowledges, and Plaintiff does not dispute, that the agreements that Plaintiff entered into do provide compensation to Plaintiff. Plaintiff's argument is that despite the contractual language setting forth Plaintiff's compensation in detail, it should receive more. Seller's remorse is not a basis for a claim of quantum meruit. Accordingly, Count VI of the FAC should be dismissed with prejudice.

### III. A STAY OF DISCOVERY IS NECESSARY, ESPECIALLY GIVEN PLAINTIFF'S ATTEMPT TO OBTAIN EXPEDITED, WHOLESALE DISCOVERY

Finally, a stay of discovery is more appropriate now than ever. The breadth of material sought by Plaintiff is alarming. For example, Plaintiff has requested:

- "All documents and things related to any prototypes, depicting adult sexual products, created by and/or for C&D since 2005, whether ever commercialized or not." (Abbey Decl. [Dkt 24-8] Ex. D, Request 4)

- "Please describe in detail all manufacturing activities in China, including, but not limited to, G-High and/or the Manning Corporation, prior to working with Sawhorse and/or Dr. Sandor Gardos." (*Id.* Ex. E, Request 6)

C&D's concerns have thus been realized. Plaintiff has sought huge categories of material from C&D, including confidential information regarding prototypes, pricing, and sales. It has failed to name a single product that it contends C&D markets because of the information provided by Plaintiff. This is precisely why C&D first filed this motion.

In its opposition brief, Plaintiff argues that, because there is no formal claim for misappropriation of trade secrets alleged in this case, C&D's argument fails. (Opp. 28-29) This is a distinction without a difference. A close examination of the FAC reveals that this is precisely what Plaintiff is attempting to allege. For example, Plaintiff contends that C&D "us[ed] Confidential Information for a purpose other than evaluation." (FAC ¶¶ 24, 30)

11

Similarly, it alleges that "although the Technology License Agreement specifically prohibited C&D from using Sawhorse's confidential information for any other purpose, the TROJAN brand began releasing other products that were based on information provided to C&D by Sawhorse." (Id. ¶ 21) Indeed, Plaintiff itself recognizes that "some trade secrets may be disclosed during discovery in relation to its claim that C&D breached the Confidentiality Agreement." (Opp. at 29 n. 20) As such, C&D respectfully requests a stay of all discovery pending resolution of the motion to dismiss.

## CONCLUSION

For all of the foregoing reasons, C&D respectfully requests that the FAC be dismissed with prejudice and that discovery be stayed pending disposition of the within motion.

Dated: February 13, 2013

Respectfully submitted,

/s/ John P. Barry
John P. Barry
**Proskauer Rose LLP**
One Newark Center
Newark, NJ 07102
Tel: (973) 274-6081
Fax: (973) 274-3299
jbarry@proskauer.com

Attorneys for Defendant
Church & Dwight Co., Inc.

12