Maureen V. Abbey
**HENINGER GARRISON DAVIS, LLC**
220 Saint Paul Street
Westfield, New Jersey 07090
Telephone: (908) 379-8475
Facsimile: (908) 301-9008
Maureen@hgdlawfirm.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | | |
|---|---|---|
| **SAWHORSE ENTERPRISES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:12-cv-06811(FLW)(TJB)** |
| **v.** | ) | |
| | ) | |
| **CHURCH & DWIGHT CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF SAWHORSE ENTERPRISES, INC'S REPLY TO DEFENDANT'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

# Table of Contents

I.   **LEGAL ARGUMENT** ........................................................................................ 1

    A.  PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY IS PROPER........................................ 4

       1.  The District Court Has Broad Discretion To Manage Discovery. ............................ 4

          a.. The Timing and Circumstances for Sawhorse's Motion for Expedited Discovery Is Ripe for Granting Plaintiff's Motion Now. .............................................................. 5

          b.C&D Has No Legal or Factual Basis To Support Its Allegation of the "Inappropriateness" of Plaintiff's Motion. .................................................................... 6

       2.  Plaintiff's Motion Takes Priority in Time Over C&D's Motion to Stay ................... 6

       3.  C&D Agrees that Expedited Discovery Is Necessary. .................................................. 7

    B.  SAWHORSE MEETS ALL ELEMENTS NECESSARY TO FIND EXPEDITED DISCOVERY PERMISSIBLE. ........................................................................................ 7

   1.  The Expedited Discovery Complies with the *Notaro* Standard. ...................................... 7

       a.Irreparable Harm ......................................................................................... 7

       b.Probability of Success on the Merits .................................................................. 9

       c.Connection between avoidance of irreparable harm and requested discovery ... 10

       d.Balance of Injury .......................................................................................... 10

   2.  Sawhorse's Motion Fully Complies With the "Reasonableness" Standard ........... 10

II.    **CONCLUSION** ........................................................................................... 12

## Cases

*Cook v. Williams, et al.*, case no. 4:09-cv-01375-CAS, (Dkt. No. 4) (E.D. Mo. Oct. 6, 2009) .................... 6

*Entertainment Technology Corp. v. Walt Disney Imagineering*, 2003 WL 22519440 (E.D. Pa. Oct. 2, 2003). ................................................................................................................................................ 11

*Integra Bank N.A. v. Trans Continental Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7781 (M.D.Fla. Feb. 2, 2007) ............................................................................................................................................... 4

*Parker v. Univ. of Penna.*, 128 Fed. Appx. 944 (3d Cir. 2005) .................................................................. 7

*Paul v. Aviva Life and Annuity Co., et al.*, case no. 3:09-cv-1490-B, Slip. Op. (Dkt. No. 59) (N.D. Tex. Nov. 12, 2009) ...................................................................................................................................... 6

*Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir. 1995) .................................................................. 4, 5

## Rules

Fed. R. Civ. P. 26(a) ............................................................................................................................... 4

Fed. R. Civ. P. 26(b)(1)............................................................................................................................ 5

Fed. R. Civ. P. 26(d) ............................................................................................................................... 4

Fed. R. Civ. P. 26(f)............................................................................................................................... 11

Fed. R. Civ. P. 35 ..................................................................................................................................... 7

L.R. 26.1(a)............................................................................................................................................... 4

L.R. 26.1(d)(1). ........................................................................................................................................ 4

## I.   LEGAL ARGUMENT

Hidden within its Preliminary Statement is the real crux of Church & Dwight's ("C&D") argument against expedited discovery—rather than focusing on the legal issues surrounding when expedited discovery is appropriate, C&D instead manipulates its own version of the facts and calls into question the credibility of Sawhorse's filing with nothing more than innuendo and pure speculation.  C&D attacks Dr. SandorGardos, Sawhorse's CEO, while also attempting to weave a story that Dr. Gardos' illness is nothing more than ephemeralbecause there is no doctor's note – an argument lacking any merit or foundation whatsoever.   C&D brazenlyquestions the credibility of Sawhorse– more specifically, it's CEO – by challenging the extent of Dr. Gardos' condition and simultaneously tries to minimize the importance of Dr. Gardos for its own self-serving purposes.  In contrast, as described in detail in Sawhorse's filings, it is evident that the primary relationship at issue is the one between Dr. Gardos, on behalf of Sawhorse, and C&D.  While C&D would like the Court to believe that others can replace Dr. Gardos, it simply is not the case.  For a large part of the activities in question, Dr. Gardos was the only participant for Sawhorse as he was the one with the educational background and industry experience that C&D sought when initially engaging Sawhorse.  It is disingenuous for C&D to point to others – namely, Amy Levinson – as someone who can act on behalf of Sawhorse in the absence of Dr. Gardos without acknowledging any consequence.  Any loss felt by Sawhorse will most certainly be borne by C&D as well given that Dr. Gardos' testimony is applicable to most – if not all – issues in the case.  C&D begrudgingly recognizes this fact as it, too, reserves the right to seek expedited discovery from Dr. Gardos – "if any expedited discovery is to be had, it should only be of Dr. Gardos."*See* Opposition, Dkt. No. 34 at 16.

Furthermore, C&D leans heavily on the fact Sawhorse should not be allowed to make

1

reasonable requests to accommodate Dr. Gardos' physical afflictions and should have considered the consequences of representing such an impaired person beforehand.  C&D blazes a trail of outrage with enflaming vocabulary and feigns disbelief that C&D had actually committed a legal wrong – all in stark contrast to the evidence already presented and evidence likely to be uncovered during discovery.  C&D even throws in facts extraneous to the instant motion to bolster its case and confuse the issuesby pointing to its own pending motion to dismiss alleging that Sawhorse needs to prove its case at this early stage of litigation.  This argument is misleading and is merely an extension of C&D's motion to dismiss –which Sawhorse has opposed – rather than addressing the issues related to the merits of expedited discovery.

Turning to Dr. Gardos' health, it is the unadorned truth that, in his signed declaration, Dr. Gardos admits his cognitive abilities are currently unaffected.Gardos Decl. ¶ 15, Dkt. No. 28-1.However, his physical health is degenerating. Gardos Decl. ¶¶6-14. Due to the unpredictable nature of his physical impairments, when and for how long he can clearly express himself is random and unpredictable. Gardos Decl. ¶¶ 6-14.While Sawhorse introduced the idea that a written deposition may be necessary, the format of Dr. Gardos' deposition is not at issue in the present motion and is just another example of C&D's attempts to confuse the issues.  In focusing so heavily on the format of Dr. Gardos' deposition, C&D concedes how critical Dr. Gardos is to the case. If theexpedited discovery is granted, then C&D, too, will likely seek early discovery.

It is unnecessary for C&D to suggest that medical records from roughly eighty (80) doctors be produced to corroborate Dr. Gardos' declaration.  Dr. Gardos prepared and signed his declaration under the penalty of perjury and has made it clear that the disease is undiagnosed, despite having seen so many doctors.  Dr. Gardos has provided all of the information regarding his disease that he can be based on physical observations.  Gardos Decl. ¶¶6-14. At this juncture,

2

C&D's proposition of an independent examination would be a waste of time because Dr. Gardos has already admitted he is competent to testify–the only question is the format.

Based on the then-ongoing business relationship with C&D, Dr. Gardos and Sawhorse had a false sense of security that there existedgood faith and fair dealing between the parties with respect to the parties' agreements and communications in general.  In 2012, the Parties exchanged correspondence directed to the royalties paid by C&D to Sawhorse under the Technology License Agreement.  When these discussions turned unfriendly, it was only then that Sawhorse realized that C&D was not planning to be forthcoming with the scope of payments due to Sawhorse.  Before culminating in 2012, it took years for Sawhorse to understand and appreciate the full extent of the harm caused by C&D as described in the Amended Complaint. Additionally, Dr. Gardos' health was oscillating over the past several years, becoming his primary concern, while running his troubled business.  Understanding that his health is not improving and appears to be progressively deteriorating, further delay would only irreparably harm and/or fully prevent Sawhorse from seeking the damages it deserves. Gardos Decl. ¶¶6-10. Finally, despite C&D's repeated attacks on the timing of this lawsuit, Sawhorse is well within its rights to pursue this relief under the relevant statutes of limitations.  There was certainly no ill intent in fully establishing the claims set forth in this case prior to launching any litigation.

Although C&D would like to classify Sawhorse as "a direct competitor," this simply isn't so.  (Dkt. No. 32, p. 11).First, Sawhorse entered the adult sex toy business years *before* C&D, which is likely the prime reason why C&D sought out the then-successful Sawhorse, and specifically Dr. Gardos, to assist them in entering the market. Second, in the 2006-2007 time period, C&D was not selling adult sex toy products directly to consumers.Instead, C&D was selling primarily through distribution chains while Sawhorse, via its website

www.MyPleasure.com, did and continues today to sell directly to consumers.  Simply put, it just doesn't make any sense that Sawhorse, earning over six million dollars in 2005, would voluntarily choose to help C&D enter this market to later become what C&D calls a "direct competitor" without some expectation of compensation. *See* Gardos Decl. ¶ 28.

Sawhorse filed this Motion based on the pure and just motivation of the need to preserve evidence and afford Sawhorse the opportunity to work with its primary witness, Dr. Gardos, in this case.  While other individuals were involved in the transactions between Sawhorse and C&D, none were involved fromthe initial contact, none dealt with C&D personnel face-to-face, and none were as deeply entrenched as Dr. Gardos.  Delaying the narrow and carefully selected discovery proposed by Sawhorse in its Motion can only tempt fate and lead to prejudice.

### A. PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY IS PROPER.

#### 1. The District Court Has Broad Discretion To Manage Discovery.

District courts have broad discretion to manage discovery under the Federal Rules of Civil Procedure ("FRCP").  *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995).  While this discretion has boundaries, "we frown upon unnecessary discovery limitations," and have refused "'to allow procedural technicalities to impede the full vindication of guaranteed rights.'"*Sempier*, 45 F.3d at 734.  The FRCPand Local Rules ("L.R.") of this Court advocate early discovery including the early exchange of discovery without awaiting the exchange of discovery requests.  *See*FRCP 26(a); L.R. 26.1(a);L.R. 26.1(d)(1).

There is no burden because C&D should already be conducting the internal investigation of its information management systems to determine what must be disclosed pursuant to FRCP 26(a)(1) and L.R. 26.1(d)(1); *seeIntegra Bank N.A. v. Trans Continental Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7781, *7 (M.D.Fla. Feb. 2, 2007) (citing FRCP 26(d))("a Court may shorten the

4

time for a party to provide discovery");FRCP 26(b)(1). Dr. Gardos' medical condition makes it necessary for Sawhorse to move for expedited discovery for the reasons enunciated in Plaintiff's Motion and supporting documents.  These facts meet the "good cause" standard of Rule 26(b)(1), in addition to the *Notaro* and "reasonableness" standards.

This Court "frown[s] upon unnecessary discovery limitations," *Sempier*, 45 F.3d at 734, such as the delay in discovery resulting from C&D's motions.  C&D's motion to stay is not merely a limitation; it is an obstructionist, delay tactic intended to frustrate Plaintiff's attempts for justice.  C&D is gaining some benefit,[1] while simultaneously impeding Plaintiff's case.  Moreover, C&D's argument maligns Plaintiff with unsubstantiated accusations and false statements ina backhanded attempt to bias the Court against Plaintiff.[2]

### a.    The Timing and Circumstances for Sawhorse's Motion for Expedited Discovery Is Ripe for Granting Plaintiff's MotionNow.

The only time for filing a Motion for expedited discovery is now.  Had C&D answered the Amended Complaint, discovery would have already commenced and this Motion would be moot.  Sawhorse's Motion for Expedited Discovery was contemplated early in the litigation as a strategy necessary to implement in view of Dr. Gardos' health. When C&D sought an extension of time to respond to the Amended Complaint in December 2012, Sawhorse informed C&D that it could not agree to an extension of time of a full thirty days from service of the Amended Complaint because of its concern with the health of Plaintiff's key witness and the resulting delay in granting such a long extension of time.  Abbey Decl., ¶ 2. In this discourse, Sawhorse informed opposing counsel of its intent to push for discovery early in the litigation.  *Id*.  There is

---

[1] Defendant's filing of the motion to dismiss, and the motion to stay delays the filing of its answer,delays the scheduling of the Rule 16 conference and delays the Rule 26 meeting and exchange of initial disclosures.

[2] Defendant's Opposition is replete with false accusations ofSawhorse misleading the court and circumventing Judge Wolfson's authority; these accusations are unfounded and unprofessional.

5

nothing inappropriate in seeking the Court's intervention for expedited discovery where a Party's key witness's ability to give meaningful input into the litigation as a strategist and as the most knowledgeable person possessing facts and first-hand knowledge of important meetings and discussions, is extremely doubtful due to an unknown medical condition. *SeeCook v. Williams, et al.*, case no. 4:09-cv-01375-CAS, (Dkt. No. 4) (E.D. Mo. Oct. 6, 2009) (attached hereto as Exh.1) (granting motion for expedited discovery based on poor health of plaintiff).

While C&D attacks and questions the credibility of Dr. Gardos' declaration, this is not sufficient to contradict the contents of the Declaration.[3] *See e.g.Paul v. Aviva Life and Annuity Co., et al.*, case no. 3:09-cv-1490-B, Slip. Op. (Dkt. No. 59) (N.D. Tex. Nov. 12, 2009)(Exh.2) (court accepted sworn affidavit as true in deciding motion for limited expedited discovery, and noted the absence of any contradictory evidence from the party opposing the motion).

### b. C&D Has No Legal or Factual Basis To Support Its Allegation of the "Inappropriateness" of Plaintiff's Motion.

C&D's argument as to the appropriateness of Plaintiff's Motion for ExpeditedDiscovery is devoid of any legal support.  That is because there exists no factual or legal support for their argument.  The Court's determination of whether to allow discovery to run its normal course, to be early, or to be stayed, must be based upon law and fact.  The law and facts of this case demonstrate that Plaintiff's request for expedited discovery is reasonable and just.

### 2.    Plaintiff's Motion Takes Priority in Time Over C&D's Motion to Stay

In December 2012, Plaintiff's counsel informed C&D's counsel that it intended to seek early discovery due to the serious health issues of one of its key witnesses.  The fact that C&D filed its motion in January 2013 knowing that Plaintiff already anticipated filing the instant

---

[3]C&D makes light of its accusations of perjury against Dr. Gardos.  These allegations, however, are taken very seriously, and the court is empowered to punish by contempt a litigant's "fraudulent and deceitful statements contained in sworn Court documents" and may initiate criminal prosecution. *SeeKim v. Kim*, 652 N.Y.S.2d 694, 696 (Supreme Ct. Nov. 27, 1996).

Motion for Expedited Discovery, negates C&D's position its motion was first in line. The truth, which C&D fails to provide, is that Sawhorse informed C&D it intended to seek expedited discovery, C&D asked about Plaintiff's health in calls with counsel, yet filed its motion to stay with full knowledge that it was contrary to the Parties' prior discussions. There is no so-called "priority" in handling the motions asC&D asserts. Moreover, the Parties requested the Court's consideration of the currently pending motions at the same time. C&D agreed to enter into a stipulation at Sawhorse's request to reset C&D's motion date to the next return date so that the two related motions could be heard and considered together.

### 3.    C&D Agrees that Expedited Discovery Is Necessary.

C&Dclaims that this Motion is a "responsive" motion to fix its alleged defects in the Amended Complaint. This is not true and C&D knows it. Rather, C&D is misleading the Court by calling into question Sawhorse's reasons for filing this motion without a good faith basis. C&D's circular argument avoids the true issues and is fraught with speculation and mudslinging.

C&D's requested medical examination of Dr. Gardos is an outright concession that expedited discovery is now desired by both Parties. C&D, however, has failed to demonstrate that Dr. Gardos' health is an issue in controversy. *Parker v. Univ. of Penna.*, 128 Fed.Appx.944, *3-4 (3d Cir. 2005). A medical examination of a party pursuant to Fed.R. Civ. P. 35 "is only ordered if the mental or physical condition of a party is "in controversy" and there is "good cause" for the examination." *Id*. (citations omitted). In sum, the Parties' arguments are in agreement that expedited discovery is necessary and serves the best interests of the Parties.

### B.    SAWHORSE MEETS ALL ELEMENTS NECESSARY TO FIND EXPEDITED DISCOVERY PERMISSIBLE.

#### 1.  The Expedited Discovery Complies withthe *Notaro*Standard.

##### a.    Irreparable Harm

Perhaps recognizing the strength of Plaintiff's position with respect to irreparable harm

7

under the *Notaro* standard, C&D spends a considerable portion of its attack on Sawhorse's support thereof.  Before arriving at its arguments, however, C&D boldly attempts to impeach the testimony in Dr. Gardos's declaration, and does so without a single piece of evidence in support thereof.  Characterizing Dr. Gardos' declaration as "self-serving" and proposing that "the statements [in his declaration] raise issues of credibility," without citing to evidence to support these assumptions is disingenuous. C&D's one cited example hardly makes sense: "Plaintiff claims that Dr. Gardos is unable to participate in an in-person, oral deposition (Dkt. No. 32,p. 8), yet Dr. Gardos' declaration states that he is still 'the primary person responsible for running Sawhorse and developing the strategy for the company's future – both since its formation and continuing today." So if Dr. Gardos doesn't feel that his current medical condition will permit him to handle an oral deposition, then he suddenly can't be an effective communicator or business strategist? Dr. Gardos never admitted to performing his job as well as he once did. As Sawhorse candidly expressed about the operation of his brain, "I do not have any judgment or cognitive impairments, and I can put my thoughts in writing, in the right environment, and if I can time and pace myself." *See* Gardos Decl. at ¶15. There is no doubt that Dr. Gardos' medical condition has taken its toll on his ability to manage Sawhorse. This is precisely the purpose of this motion and is not a reason to wage an unsupported attack on Dr. Gardos' credibility.

C&D's first real argument is that Plaintiff's support for its irreparable injury is somehow weakened because it did not bring this lawsuit before "[t]he contracts were signed some six and seven years ago."  But at that time, when the parties were discussing C&D's future promises of a lucrative partnership, Plaintiff had no inkling that it would later be defrauded by C&D.  The present lawsuit was commenced not long after Sawhorse first understood or had knowledge that it would not be fully compensated and when Sawhorse fully understood the harm it has suffered.

Continuing in the context of irreparable harm, C&D next questions the legitimacy of Sawhorse's reliance upon Dr. Gardos as a witness in this case stems from his unique knowledge of certain intimate facts of private conversations and discussions with C&D representatives. The individuals cited as 30(b)(6) witnesses in Exhibit A to Plaintiff's Motion indeed have knowledge of particular areas of Sawhorse's business, but they know nothing of the specific details of these conversations and discussions. That C&D claims these facts could easily be conveyed to other members of Sawhorse when none of these other members were privy to the private discussions is utterly ridiculous. Dr. Gardos is certainly not the only person with knowledge of facts supporting the claims in Plaintiff's Amended Complaint, but he's the only one who possesses knowledge of all of them. In sum, if Sawhorse were to lose Dr. Gardos before obtaining the requested discovery, it will lose the only person who can effectively negate or defend all facts and claims.

Finally, C&D argues that a protective order would "render the sole justification for this motion moot." Assuming for a moment that a protective order would designate *all* documents requiring Dr. Gardos's unique knowledge as "attorney's eyes only," a designation which will assuredly be disputed, nothing precludes Sawhorse's counselfrom sharing or conveying to Dr. Gardos any issues involving the wealth of non-privileged factual information which will be contained in this discovery. At this stage of the litigation, making assumptions about the exclusive function of a protective order to support an argument is futile. Accordingly, Plaintiff has unequivocally demonstrated the irreparable harm that it would suffer if it were prevented access to the requested expedited discovery.

### b.    <u>Probability of Success on the Merits</u>

As Sawhorse adequately explained in its Motion, the First Amended Complaint and Dr. Gardos's supporting declaration provide sufficient evidence that Sawhorse will succeed on the

merits of this case. In response to this evidence, C&D has done nothing more than muddle the issues by redirecting the court's attention to its Motion to Dismiss, a tactic that C&D uses frequently throughout its Opposition.

<b>c.    Connection between avoidance of irreparable harm and requested discovery</b>

As previously explained, the expedited discovery requested by Sawhorse is inextricably connected to the irreparable harm it seeks to avoid. If the irreparable harm is represented by the loss of wisdom and experience of a key witness, then it is undeniably important to the success of Sawhorse's case to obtain the requested expedited discovery to gain assistance from Dr. Gardos.[4] C&D has introduced no facts which would sever this connection.

<b>d.    Balance of Injury</b>

Despite C&D's posturing, Sawhorse's harm is very real. Without this discovery, Sawhorse would never be able to fully formulate viable defenses to C&D's counterclaims or corroborate other averments byC&D which relate to facts that are particularly within his knowledge. Because all claims in this suit are supported heavily by facts which only Dr. Gardos can corroborate, his absence could be very damaging.In contrast, C&D's burden in producing documents related to Sawhorse's discovery requests is minimal and would be requested in due course anyway. In addition, the "proprietary information" which C&D is so reluctant to share is not proprietary. C&D didn't seem to have a problem obtaining this "proprietary information" from a supposed "competitor" when it wanted Dr. Gardos' help in building a new line of business. Why should it expect to be prejudiced by disclosing this information back to the same company? Regardless, the overwhelming weight of potential harm falls on the back of Sawhorse.

<b>2.    Sawhorse's Motion Fully Complies With the "Reasonableness" Standard</b>

---

[4] C&D argues that Dr. Gardos would not be permitted to review documents in this case relying on a protective order and document designations that do not yet exist.  This is premature.

10

C&D grossly overstates the importance of a preliminary injunction in a court's evaluation of whether to grant expedited discovery.Under the reasonableness standard, applicable to this case, "a district court should decide a motion for expedited discovery on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." *Entertainment Technology Corp. v. Walt Disney Imagineering*, 2003 WL 22519440 (E.D. Pa. Oct. 2, 2003).At no timehas Sawhorse requested a preliminary injunction, yet C&D persists in focusing the Court's and its own attention on cases which show that expedited discovery may be necessary to enable the court to examine the parties' interests and possibility for success on the merits at a preliminary injunction hearing. As suggested by *Entertainment Technology Corp.* though, discovery is clearly warranted in other circumstances when a request for a preliminary injunction is absent. *Id.*None of the cases C&D cites explicitly foreclose other circumstances, such as the urgent situation Sawhorse faces. Ultimately, the decision to grant the present Motion is within the sound discretion of the Court.

In addition to overly emphasizing preliminary injunction situations, C&D places too much emphasis on the timing of this request. As its name signifies, a request for *expedited* discovery is made before a Rule 26(f) conference. The timing of Sawhorse's request is therefore tempered by its apparent need for such discovery and the attendant burden on C&D to comply with this request. Having already addressed that the need for expedited discovery is great and the burden on C&D is negligible, the timing of Sawhorse's request is justified.

The discovery requests tendered by Sawhorse are concise, being both limited in time spans, numbers of requests, and deposition numbers. To persuade the Court otherwise, C&D attempts to paint the discovery requests as "overly broad, burdensome" and an attempt to "seek large categories of material stretching back several years." Yet, the Parties only began

interacting in 2005.  Further, Sawhorse has focused on material relevant to Counts IV-VI of the Amended Complaint.  Granted, there may be some overlap with Counts I-III, which address breaches of contract, the claims of fraud, breach of the covenant of good faith and fair dealing, and quantum meruitare related to the contracts.  These claims include formation of a contract through to performance and monies paid during the Parties' dealings, whereas simple breach is confined to an executed contract.  Thus, while there is minimal overlap, the discovery requested is indeed directed at Counts IV-VI.

## II.   CONCLUSION

In sum, Sawhorse has exposed C&D's Opposition for what it is: (1) a baseless and circular attack on one man's credibility and (2) an attempt to redirect the court's attention to its motion to dismiss and away from the impending issues presented in this motion. Under this cloud of dust, Sawhorse has presented more than enough evidence to satisfy both the *Notaro* and reasonableness standards, warranting the expedited discovery it requests.

Dated: February 13, 2013

s/ Maureen V. Abbey
Maureen V. Abbey
**HENINGER GARRISON DAVIS, LLC**
220 Saint Paul Street
Westfield, New Jersey 07090
Telephone: (908) 379-8475
Facsimile: (908) 301-9008
Email: maureen@hgdlawfirm.com

*Attorney for Plaintiff*
*Sawhorse Enterprises, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

s/ *Maureen V. Abbey*

13