NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAWHORSE ENTERPRISES, INC., | : | |
| | : | **Civil Action No. 12-6811 (FLW)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | |
| CHURCH & DWIGHT CO., INC., | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is a Motion for Expedited Discovery by Plaintiff Sawhorse Enterprises, Inc. ("Sawhorse") [Docket Entry No. 25]. Defendant Church & Dwight Co., Inc. ("C&D") opposes Sawhorse's motion [Docket Entry No. 32]. The Court has fully reviewed all papers in support of and in opposition to Sawhorse's motion. For the reasons stated below, Sawhorse's motion is DENIED WITHOUT PREJUDICE.

### I.      BACKGROUND

This action was brought by Sawhorse alleging breach of contract, breach of the covenant of good faith and fair dealing, fraud, and quantum meruit. Sawhorse alleges that in 2005, C&D contacted the CEO of Sawhorse, Dr. Sandor Gardos, to obtain his knowledge and information about the adult sexual products industry. Sawhorse then alleges that C&D used that information, with the aid of Dr. Gardos, to develop an adult sexual product line, and that C&D made "countless promises that a mutually beneficial partnership was forthcoming." *Sawhorse's Brief in Support,* Docket Entry No. 25-1, *5. Sawhorse alleges that no partnership was formed and that, as a result, "Sawhorse was never fully compensated for its contributions." *Id.*

By way of the instant motion, Sawhorse seeks expedited discovery with respect to Dr. Gardos.   Dr. Gardos's health has been declining for the past two years, during which time "he has visited approximately 80 doctors for diagnoses on his condition, none of whom have been able to diagnose his infirmity or provide a treatment plan." *Id.* at *6.   However, Dr. Gardos has stated that the doctors have determined that the disease is "both progressive and degenerative." *Id.* at *7. The following language from Sawhorse's moving brief describes Dr. Gardos's physical condition:

> Presently, Dr. Gardos is unable to leave his home unless such trips are short and under constrained conditions.   His condition includes both systemic and neurological side effects.   Specifically, the systemic side effects include unsightly lesions on his arms and face which bleed frequently and prevent Dr. Gardos from bathing regularly.   Additionally his mobility is severely limited, rendering him highly unfit for travel to a deposition or trial.   Indeed, Dr. Gardos has restricted movement and is unable to endure long periods of activity – either sitting or standing – without resulting in severe exhaustion.   Even minimal activity – like speaking with counsel over the phone – makes Dr. Gardos extremely fatigued.
>       As for the neurological side effects, Dr. Gardos suffers from speech impediments that can be characterized as similar to Tourette-Syndrome-like symptoms.   Thus, Dr. Gardos' speech is often interrupted by vocal tics and unpredictable word choice.   These symptoms are apparent during conversations with Dr. Gardos as they occur quite regularly.   Any form of deposition which requires Dr. Gardos to speak would be extremely taxing on Dr. Gardos and, likewise, difficult for anyone attempting to record his statements.   Further, his neurological illness causes him to use some unintended language at time, which also would be difficult in a live, oral deposition setting.

*Id.*

Despite the above, however, Dr. Gardos maintains that his cognitive abilities are still functioning. *Id.*

## II.   ARGUMENTS

Sawhorse begins by noting that courts can employ one of two standards in evaluating whether expedited discovery is proper.   The first is a "good cause" or "reasonableness" standard and the second is a more stringent standard, akin to that of a preliminary injunction, which has been labeled the *Notaro* test, from *Notaro v. Koch,* 95 F.R.D. 403 (S.D.N.Y. 1982).   Under

2

*Notaro,* the moving party is required to establish: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited discovery relief is granted." *Id.* at *9, quoting *Notaro.* Sawhorse contends that the reasonableness standard should be employed by the Court, although it also argues that it has satisfied the *Notaro* standard.[1]

Sawhorse argues that the *Notaro* standard is applied only when the nonmoving party needs protection from the Court, or there are questionable motives at issue. *Id.* Sawhorse claims that no such circumstances are present; that C&D has retained counsel and "has had ample opportunity…to begin its investigation and fact review." *Id.* at *10. Furthermore, Sawhorse argues that the instant motion is not being used for any ulterior motive. *Id.*

As to its discovery request, Sawhorse claims that their request is narrow in scope and places little burden on C&D. Sawhorse seeks discovery on only three of its six alleged claims: fraud, quantum meruit and breach of the covenant of good faith and fair dealing. *Id.* at *11. Sawhorse maintains that each of these claims can be "supported or contradicted by facts predominantly within the control of Dr. Gardos and certain employees of C&D[.]" *Id.* Sawhorse seeks "documents relating to communications between Dr. Gardos" and several others and also to depose two C&D employees and Dr. Gardos, with the latter to be conducted through the use of written questions rather than an in-person deposition. *Id.* Sawhorse contends that this request is extremely limited in scope and that it is warranted based on Dr. Gardos's declining health. If something permanent should happen to Dr. Gardos, Sawhorse argues that "Dr. Gardos is

---

1 Because the Court has determined herein that the reasonableness standard is to be employed, the Court shall not discuss at length the parties' arguments under *Notaro*.

Sawhorse's lifeblood and prized vessel of knowledge" and that it will be "immensely prejudiced by [his] effective absence." *Id.* at 12. Sawhorse argues that it needs Dr. Gardos to "assist in gathering facts and analyzing the prior history between the parties" or else it will be unable to "proceed on a fair footing." *Id.*

C&D opposes Sawhorse's motion and its argument is threefold. First, C&D argues that Sawhorse's motion is untimely in that it was brought subsequent to a Motion to Dismiss/Motion to Stay filed by C&D. Second, C&D contends that Sawhorse has not met either standard for expedited discovery because it relies on the certification of Dr. Gardos alone. Finally, C&D argues that even if discovery were to be permitted, the discovery requested here is overbroad.

C&D contends that the District Court should have the opportunity to rule on the Motion to Dismiss before any discovery is conducted. By way of its Motion to Dismiss, C&D contends that Sawhorse has not sufficiently pled its case and therefore, C&D believes that Sawhorse is using the present motion to obtain discovery to fashion a new claim based upon the information it receives. *C&D's Brief in Opposition,* Docket Entry No. 32, *11. C&D argues that Sawhorse is one of its competitors and therefore should not be permitted to obtain the discovery it seeks before it is determined whether or not the case has been sufficiently pled. *Id.* at 12.

Furthermore, C&D contends that Sawhorse has failed to meet its burden to show that the request is reasonable "in light of all of the surrounding circumstances." *Id.* at *16 (internal citations omitted). C&D argues that one of the most important factors in evaluating a motion for expedited discovery is whether a motion for a preliminary injunction is pending. *Id.* at *17. C&D claims that because no motion is currently pending, the need for expedited discovery is minimized. In addition, C&D claims that the motion "is being made far in advance of the time when discovery would normally begin." *Id.* at *17-18. C&D states that no initial conference has been had or even

4

set and that discovery would not begin until thereafter. *Id.* at \*18. Moreover, C&D contends that "Plaintiff's discovery requests are overly broad, burdensome and seek large categories of material stretching back several years[.]" *Id.* C&D disputes Sawhorse's contention that the discovery pertains to only three of its six causes of action and argues that "the discovery requests…are also plainly directed to the breach of contract claims[.]" *Id.* Lastly, C&D maintains that Sawhorse has not shown any irreparable harm that would result if the motion were not granted. C&D characterizes Dr. Gardos's declaration as uncorroborated and self-serving and argues that it "not only fails to establish irreparable harm; it also raises serious questions concerning the bona fides of his averments." *Id.* at \*19.

Finally, C&D argues that "if any expedited discovery is to be had, it should only be of Dr. Gardos, and then only if an independent medical evaluation warrants that." *Id.* As to Sawhorse's request that Dr. Gardos's deposition be conducted in writing rather than in-person, C&D maintains that, in the absence of any certification by a doctor, it simply does not have enough information to respond to such a request at this time. *Id.*

## III.   ANALYSIS

For the reasons set forth below, the Court has applied a reasonableness standard in assessing the appropriateness of expedited discovery and the Court concludes that Sawhorse's expedited discovery request must be denied at this juncture.

### A.  Legal Standard

Federal Rule of Civil Procedure 26 provides the courts with very broad discretion in the management of the discovery process. *See* FED. R. CIV. P. 26. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). FED. R. CIV. P. 26(f). However, the court, upon motion, for the convenience of the parties and witnesses and in the

interest of justice, may grant leave to conduct discovery prior to a conference amongst the parties. FED. R. CIV. P. 26(d).

Unlike most other discovery provisions within the Federal Rules, these provisions contain little guidance regarding the granting of expedited discovery.   Courts have generally employed one of two standards for determining the appropriateness of expedited discovery.   The first is the more formal analysis outlined in *Notaro*, 95 F.R.D. 403.   The *Notaro* standard is very similar to a preliminary injunction analysis and looks more closely at the merits of the requests.   The second is the reasonableness standard, which requires the party seeking the discovery to prove that the requests are reasonable under the circumstances. *Entertainment Technology, Corp. v. Walt Disney Imagineering*, No. 03-3546, 2003 WL 22519440 at *3 (E.D.Pa. October 2, 2003); *Gucci America, Inc. v. Daffy's, Inc.*, No. 00-4463, 2000 WL 1720738 (D.N.J. Nov. 14, 2000); *Philadelphia Newspaper Corp. v. Gannett Satellite Information Network, Inc.*, No. 98-CV-27821, WL 404820 (E.D.Pa. July 15, 1998).

### 1.  *Notaro* Standard

Under the *Notaro* standard the moving party must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."   *Notaro*, 95 F.R.D. at 405.   The Notaro court reasoned that such stringent standards are appropriate to protect defendants at such an early stage of the litigation. *Id.*

In *Gucci*, this Court, *i.e.,* the District of New Jersey, applied the *Notaro* standard in denying a request for expedited discovery because the request had a substantive element to it.   *Id.* at *6.

6

The Court believed that Gucci intended to use the information sought through discovery to root out certain Gucci distributors improperly selling their handbags or "knock-off" handbags to defendant at discounted prices.  *Id.* at *5-6.  The Court also noted that being forced to reveal their distributor would greatly harm Daffy's interest and give Gucci the information they desired as the ultimate goal of the litigation.  The heightened standard was appropriate because of Gucci's questionable motives.  *Id.* at *6.

### 2.  **Reasonableness Standard**

The reasonableness standard is significantly more liberal than the *Notaro* standard and has recently evolved considerably.   Application of this standard depends on the actual circumstances of each case, as well as consideration of certain factors such as a pending preliminary injunction hearing, the need for the discovery and the breadth of the requests.  *Entertainment Tech., Corp.*, 2003 WL 22519440 at *3.   The Eastern District of Pennsylvania has noted that "expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings."  *Philadelphia Newspaper Corp.*, 1998 WL 404820 at *2 (quoting *Ellsworth Associates, Inc. v. United States*, 917 F.Supp. 841, 844 (D.D.C. 1996)).  "Expedited discovery has been ordered where it would 'better enable the Court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing."  *Philadelphia Newspaper Corp.*, 1998 WL 404820 at *2(quoting *Educata Corp. v. Scientific Computers, Inc.*, 599 F.Supp. 1084, 1088 (D.Minn. 1984), *aff'd* in part, *rev'd* in part on other grounds 746 F.2d 429 (8th Cir. 1985)).   If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted.  *Entertainment Tech., Corp.*, 2003 WL 22519440 at *3.   Where the requests are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied.  *Id.*

Under the reasonableness standard, the court examines the appropriateness of a request for expedited discovery by weighing the need for the discovery at that point in the litigation with the breadth of the discovery requests. *Id.* (citing *Merrill Lynch, Pierce Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D.Ill. 2000)).   A number of courts have applied a "good cause" test similar to the inquiry made in *Merrill Lynch* and *Philadelphia Newspaper*. *See Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275(N.D.Cal. 2002); *Merrill Lynch, Pierce Fenner & Smith, Inc.*, 194 F.R.D. at 624, and *Philadelphia Newspaper*, 1998 WL 404820 at *2.   This test weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party. *Semitool, Inc.*, 208 F.R.D. at 276.   The factors considered include how far in advance of the formal start of discovery the request is made, whether the discovery requests are narrowly tailored, the purpose of the requested early discovery, whether the discovery burdens the defendants, and whether the defendants are able to respond to the requests in an expedited manner. *Id.* at 276-78.

Building upon this precedent, in deciding a motion for expedited discovery, this Court looks at "'the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances,' unless the circumstances are such that the *Notaro* factors apply." *Entertainment Tech. Corp*, 2003 WL 22819440 at *4 (quoting *Merrill Lynch*, 194 F.R.D. at 624).

## B.  Applicable Standard and Analysis

The Court finds that the reasonableness standard applies to Sawhorse's motion for expedited discovery.   As in *Gucci,* in making this determination, the Court has focused on whether the present litigation is being used as a means to discover the requested information. Unlike in *Gucci*, in this case, granting Sawhorse's motion would not result in Sawhorse essentially obtaining the relief requested in its Complaint.   Although C&D argues that Sawhorse is using the

present motion to obtain discovery to fashion a new claim based upon the information it receives, given the totality of the circumstances, "that fact is better weighed against granting the Plaintiff's motion within the rubrik of an overall reasonableness test, rather than used to trigger the strictures of the Notaro test." *See Entertainment Tech., Corp*., 2003 WL 22519440 at *4.   Further, the Court notes that the issue of which standard should apply is really a non-starter because, as discussed below, Sawhorse's request fails under the more lenient reasonableness standard.

In applying the reasonableness analysis, the Court must weigh the need for discovery at that point with the breadth of the discovery requests.      *Id.* (citing *Merrill Lynch, Pierce Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618 (N.D.Ill. 2000)).   This case does not involve a preliminary injunction.   Therefore, the need for expedited discovery is less urgent as it would not better enable the Court to rule on issues at a preliminary injunction hearing.   The absence of a preliminary injunction, however, is not determinative of whether expedited discovery should be permitted.   Instead, whether a preliminary injunction has been filed is only one factor considered by the Court.   *Id* at 4.   Other factors considered include how far in advance of the formal start of discovery the request is made, whether the discovery are requests narrowly tailored and the purpose of the requested early discovery. *See Semitool, Inc.*, 208 F.R.D. at 276-78.   Further, the Court must weigh the need for expedited discovery against the prejudice to the responding party. *Id*. at 276.

A number of considerations lead to the Court's decision to deny Sawhorse's request for expedited discovery in this case.   First, Sawhorse's request comes before there has been a Rule 26 conference and before a discovery schedule has even been contemplated.   Second, C&D would be burdened to the extent that they would be required to prepare for several depositions at such an early stage in the litigation.   Third, to the extent that Sawhorse seeks documents from C&D and

9

depositions of people other than Dr. Gardos at this early stage, the request is overbroad. *See Entertainment Tech. Corp*, 2003 WL 22819440 at *5 (citing *Semitool, Inc.*, 208 F.R.D. at 277-78)). The Court does not dispute the fact that the deposition of Dr. Gardos will be important and relevant to the merits of Sawhorse's case; however, Sawhorse does not set forth any meaningful limits on the scope of their questioning in their deposition notices or in their document requests and interrogatories.  Finally, the most compelling reason for denial is the absence of any medical corroboration of Dr. Gardos' declaration which is the entire basis of Sawhorse's motion.

While Sawhorse focuses on the fact that "Dr. Gardos prepared and signed his declaration under the penalty of perjury and has made it clear that the disease is undiagnosed, despite having seen so many doctors" (*Sawhorse's Reply Brief,* Docket Entry No. 42, *5), the Court finds Dr. Gardos' declaration without any medical corroboration to be insufficient.  In reaching this conclusion, the Court finds the fact that Dr. Gardos' condition has been undiagnosed to be of minimal concern with respect to this motion.  It is the absence of any medical support – report, analysis, certification, etc. – which troubles the Court.  The Court is certainly sympathetic to Dr. Gardos's condition and appreciates that it may, indeed, be both progressive and degenerative. However, in light of the above, together with the fact that Dr. Gardos has declared that his cognitive abilities appear largely unimpaired, the Court finds that the requested expedited discovery is not warranted at this time.

For the aforementioned reasons, the Court finds that expedited discovery is inappropriate at this time and Sawhorse's motion is therefore denied.

**IV.    CONCLUSION**

For the foregoing reasons, Sawhorse's Motion for Expedited Discovery is DENIED WITHOUT PREJUDICE. An appropriate Order follows.


Dated: April 3, 2013

<u>s/Tonianne J. Bongiovanni</u>
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**